# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF MICHIGAN

# SOUTHERN DIVISION

Lear Corporation

        Plaintiff

vs

NHK Seating of America,Inc.

        Defendant

_____

Case No.  2:13-cv-12937-LJM-RGW

HON. LAURIE J. MICHELSON
District Judge

JAMES F. DAVIS
Special Master

SPECIAL MASTER REPORT AND RULING

ON CLAIM CONSTRUCTION

TABLE OF CONTENTS

Procedural History                                    3

The Patents-In General                            3 - 4

The Law                                                  4 - 5

Claim Construction

    '043 patent

        Claims asserted, text          6 - 13

        Construction  (a) – (e)        13 - 15

    '949 patent

        Claims asserted, text          15– 16

        Construction   (f)                  17

    '733 patent

        Claims asserted, text          17 – 18

        Construction  (g) (h)          18 – 20

    '357 patent

        Claims asserted, text          20 – 22

        Construction   (i)                22 – 24

    '818 patent

        Claims asserted, text          24 – 26

        Construction    (j)  (k)  (l)     26– 27

PROCEDURAL HISTORY

By Order of Reference dated March 2, 2018, the Honorable Laurie J. Michelson, United States District Judge for the Eastern District of Michigan, Southern Division referred this matter to Special Master James F. Davis, pursuant to Fed.R.Civ.P. 53. The order noted that the "volume and complexity" of the issues raised in this patent case is "good cause to appoint a special master", in particular for preparation of "a report and recommendation regarding . . . claim construction."

The parties briefed the issues and a claim construction hearing was held on March 16, 2018 before Judge Michelson. A copy of the Special Master's Report and Ruling was submitted to counsel on March 30, 2018 for "suggestions", pursuant to instructions by the Court. Rule 53, Advisory Committee Notes, 2003 Amendments, Subdivision (f); Order of Reference, Paragraph (7). The parties responded with "suggestions" which were helpful and are reflected in the "final report" where "deemed appropriate." Order, Paragraph (7).

THE PATENTS – IN GENERAL

There are five patents in suit:    U.S. 5,378,043 ('043);

6,631,949 ('949);

6,655,733 B2 ('733);

7,455,357 B2 ('357); and

8,434,818 B2 ('818).

The claims asserted to be infringed are:

'043 (14, 45, 49, 57, 62, 86, 90 and 94);

'949 (4 and 17);

'733 (15);

'357 (1, 4, 5, 18 and 19) and

'818 (2).

The patents all deal with automobile seats having attached headrests. The headrests are designed and function to minimize injury to passengers resulting from rear-end or front-end automobile collisions. The patents are not related as "family" in patent law parlance, i.e. continuations, continuations-in-part or divisions. They are however related in the sense that they all deal with complex mechanical features by which the automobile seats and headrests are constructed and act together.

The patents have one common inventor, Mladen Humer, East Detroit, Michigan, and a variety of other inventors. '043 was originally assigned to General Motors Corporation, all others to plaintiff Lear Corporation

In general, the first- filed application '043 (filed 1993; issued 1995) was reexamined resulting in an Ex Parte Reexamination Certificate in 2012. It is directed to a vehicle seat-headrest arrangement for protecting a passenger from injury in a rear-end collision.  '949 (filed 2002, issued 2003) differed from '043 in certain structural details. '733 (filed 2002, issued 2003) includes embodiments directed to front-impact collisions. '357 (filed 2006, issued 2008) includes embodiments having a "four-bar mechanism" as part of an "active head restraint system." '818 (filed 2012, issued 2013) discloses certain additional modifications to the seat-headrest arrangement.

THE LAW

Claim construction is a matter of law. It begins with the language of the claims and usually embraces other intrinsic evidence, namely the patent specification and file history. Extrinsic evidence such as expert testimony, technical literature and dictionaries may at times be helpful. *Markman v Westview Instruments, Inc.* 52 F3d 967(Fed Cir. 2002) *a'ffd.* 116 S. Ct. 1384 (1996).

The law of claim construction, while not in dispute, is easily stated but often difficult to apply. Claim terms normally carry their ordinary and customary

meaning to those skilled in the related art. *Teleflex,Inc v Ficosa N.Am.Corp,* 299 F.3d 1313 (Fed.Cir. 2002).  The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will usually be the correct construction. *Phillips v. AWH Corp.* 415 F.3d 1303 (Fed.Cir. 2005). Claims are read and construed in light of the specification but not limited in scope thereby. *Markman*, supra; *Vitronics Corp. v  Conceptronic, Inc.,* 90 F.3d 1576 (Fed.Cir.1996).

Prosecution history may also be helpful in construing claims. *Vitronics*, supra. Prosecution history may limit the interpretation of claims to exclude any interpretation that was disclaimed during prosecution in order to obtain claim allowance. *Southwall Technologies v. Cardinal IG Co.,* 54 F.3d 1570 (Fed.Cir. 1995). In most cases, intrinsic evidence alone, i.e. the patent disclosure, the claims and prosecution history, provides the basis for claim construction and interpretation. *Pall Corp. v. Micron Separation, Inc.,* 66 F.3d 1211 (Fed. Cir.1995).

Sometimes there is a fine line between construing claims in light of the specification and file history and reading limitations of the specification into the claims. *Comark Communications, Inc. v. Harris Corp.,* 156 F.3d 1182(Fed.Cir.1998). Examples disclosed in a preferred embodiment of an invention may aid in proper claim construction; however claim scope is not ordinarily restricted or limited by such examples. *Ekchian v. Home Depot, Inc.,* 104 F.3d 1299 (Fed. Cir. 1997). Where a specification does not require a limitation, that limitation should not be read into the claims.  *Specialty Composites v. Cabot Corp.* 845 F.2d 981 (Fed.Cir. 1988); *Lemelson v United  States,* 752 F2d 1538 (Fed.Cir. 1985).  However, if a preferred embodiment is described as the invention itself, the claims may not be entitled to a scope greater than the embodiment. *Modine Mfg. Co. v. United Stated ITC,* 75 F.3d 1545 (Fed.Cir. 1996);  *Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc. et al*. No. 05-1233, (Fed. Cir. decided May 11, 2006)

 CLAIM CONSTRUCTION[1]

Neither party cites or relies on prosecution histories to assist in claim construction. Nor does either party rely on expert testimony. At times, the parties cite and rely on dictionaries or technology publications.  The asserted claims along with their lineage are set out below with the disputed words or phrases underlined:

'043 patent; claims asserted (14, 45, 49, 57, 62, 86, 90 and 94)

'043    CLAIM 14    (dependent from claims 2 and 13)

Claim 2

A vehicle seat and headrest arrangement comprising:

a  seat bun frame having fore and aft ends;

a seatback frame joined to the bun frame adjacent the aft end of the bun frame;

a headrest pivotally attached with the seatback frame along a pivotal axis generally perpendicular to the fore and aft direction whereby, upon a rear impact of a vehicle  in which the arrangement is mounted, the pivotal attachment allows the headrest to move  in a forward direction toward the head  of an occupant of the vehicle seat , wherein the headrest has a cushion portion;

an impact target operatively associated with the cushion portion and pivotally associated with the seatback frame, wherein a force, in the aft direction from the rear impact, upon the impact target causes the headrest to rotate forwardly; and

---

[1] An early draft of this Report was prepared based on the parties' opening  Claim Construction briefs dated February 12, 2018 and response briefs dated February  26, 2018, as well as tutorial exhibits and slide exhibits used at the March 16, 2018 hearing.

On March 23, 2018, the parties advised the Special Master that the disputed issues re "predetermined force" and "seatback" have been resolved and need not be addressed by the Special Master. Accordingly, this report has been modified.

Regarding the "suggestions" made by the parties to the draft Report sent to them on March 30, noted above, plaintiff addressed only one disputed word or phrase, viz. "bushing" in the '043 patent. Defendant also addressed only one word or phrase, the phrase in claim 10 of the '733 patent . . . "upon impact to the vehicle . . . to support a head of an occupant." This final report was modified in light of both "suggestions."

a spring operatively associated with the <u>seatback frame</u> biasing the headrest against pivotal movement.

Claim 13

An arrangement as described in claim 2 wherein the <u>seatback frame</u> comprises a pair of spaced apart side members joined by a cross frame member.

Claim 14

An arrangement as described in claim 13  wherein the <u>seatback frame is shaped as an inverted "U"</u>.

'043  CLAIM 45 (dependent from claims 2 and 6)

Claim 2

A vehicle seat and headrest arrangement comprising:

a  seat bun frame having fore and aft ends;

a <u>seatback frame</u> joined to the bun frame adjacent the aft end of the bun frame;

a headrest pivotally attached with the <u>seatback frame</u> along a pivotal axis generally perpendicular to the fore and aft direction whereby, upon a rear impact of a vehicle  in which the arrangement is mounted , the pivotal attachment allows the headrest to move  in a forward direction toward the head  of an occupant of the vehicle seat , wherein the headrest has a cushion portion;

an impact target operatively associated with the cushion portion and pivotally associated with the <u>seatback frame,</u> wherein a force, in the aft direction from the rear impact, upon the impact target causes the headrest to rotate forwardly; and

a spring operatively associated with the <u>seatback frame</u> biasing the headrest against pivotal movement.

Claim 6

An arrangement as described in claim  2 wherein the headrest cushion portion is separated from the seatback frame by a <u>post</u>.

Claim 45

An arrangement as described in claim 6 wherein the <u>seatback frame comprises a cross member</u>; and  wherein the <u>post</u> is connected to the cross member to translate relative to the cross member as the headrest pivots.


'043  CLAIM 49  (dependent from claims 2, 6 and 47)

Claim 2

A vehicle seat and headrest arrangement comprising:

a  seat bun frame having fore and aft ends;

a <u>seatback frame</u> joined to the bun frame adjacent the aft end of the bun frame;

a headrest pivotally attached with the <u>seatback frame</u> along a pivotal axis generally perpendicular to the fore and aft direction whereby, upon a rear impact of a vehicle in which the arrangement is mounted , the pivotal attachment allows the headrest to move  in a forward direction toward the head  of an occupant of the vehicle seat , wherein the headrest has a cushion portion;

an impact target operatively associated with the cushion portion and pivotally associated with the seatback frame, wherein a force, in the aft direction from the rear impact, upon the impact target causes the headrest to rotate forwardly; and

a spring operatively associated with the <u>seatback frame</u> biasing the headrest against pivotal movement.


Claim 6

An arrangement as described in claim 2 wherein the headrest cushion portion is separated from the seatback frame by a post.

Claim 47

An arrangement as described in claim 6 wherein the seatback frame  comprises a cross member; and wherein the post is operably connected  to the cross member to translate and pivot relative to the cross member as the headrest pivots.

Claim 49

An arrangement as described in claim 47 wherein the post is operably connected to the cross member by a bushing.

'043  CLAIM 57

57.  A vehicle seat and headrest arrangement comprising;

a seat bun frame having fore and aft ends;

a seatback frame joined to the bun frame adjacent the aft end of the bun frame;

a headset pivotally attached with the seatback frame along a pivotal axis generally perpendicular to the fore and aft direction whereby, upon a rear impact of a vehicle in which the arrangement is mounted,  the pivotal attachment allows the headrest to move in a forward direction toward the head of an occupant of the vehicle seat;

a target pivotally mounted to the seatback  along a pivotal axis generally perpendicular to the fore and aft direction underneath the headrest and operatively associated with the headrest wherein loading of the target, in the aft direction from the rear impact causes the headrest to pivot forwardly; and

a spring operatively associated with seatback frame biasing the headrest against pivotal movement.

'043  CLAIM 62 (dependent from claims 59 and 57)

57.  A vehicle seat and headrest arrangement comprising;

a seat bun frame having fore and aft ends;

a seatback frame joined to the bun frame adjacent the aft end of the bun frame;

a headset pivotally attached with the seatback frame along a pivotal axis generally perpendicular to the fore and aft direction whereby, upon a rear impact of a vehicle in which the arrangement is mounted,  the pivotal attachment allows the headrest to move in a forward direction toward the head of an occupant of the vehicle seat;

a target pivotally mounted to the seatback  along a pivotal axis generally perpendicular to the fore and aft direction underneath the headrest and operatively associated with the headrest wherein loading of the target, in the aft direction from the rear impact causes the headrest to pivot forwardly; and

a spring operatively associated with seatback frame biasing the headrest against pivotal movement.

Claim 59

An arrangement as described in claim 57 wherein the headrest is separated from the seatback by a post.

Claim 62

An arrangement as described in claim 59 further including the seatback frame having a cross member and wherein the post is operatively associated with the target and a cam guide to direct the target and wherein the post has a pivotal axis with respect to the cross member which is non-fixed with respect to the post upon impact upon the target, causing the headrest to pivot forwardly and extend upwardly.

'043  CLAIM  86 (dependent from claims 59 and 57)

57.  A vehicle seat and headrest arrangement comprising;

a seat bun frame having fore and aft ends;

a seatback frame joined to the bun frame adjacent the aft end of the bun frame;

a headset pivotally attached with the seatback frame along a pivotal axis generally perpendicular to the fore and aft direction whereby, upon a rear impact of a vehicle in which the arrangement is mounted,  the pivotal attachment allows the headrest to move in a forward direction toward the head of an occupant of the vehicle seat;

a target pivotally mounted to the seatback  along a pivotal axis generally perpendicular to the fore and aft direction underneath the headrest and operatively associated with the headrest wherein loading of the target, in the aft direction from the rear impact causes the headrest to pivot forwardly; and

a spring operatively associated with seatback frame biasing the headrest against pivotal movement.

Claim 59

An arrangement as described in claim 5  wherein the headrest is separated from the seatback by a post.

Claim 86

An arrangement as described in claim 59 wherein the seatback frame comprises a cross member, and wherein the post is connected to the cross member to translate relative to the cross member as the headrest pivots.


 '043  CLAIM 90  (dependent from claims 57, 59 and 88)

57.  A vehicle seat and headrest arrangement comprising;

a seat bun frame having fore and aft ends;

a seatback frame joined to the bun frame adjacent the aft end of the bun frame;

a headset pivotally attached with the seatback frame along a pivotal axis generally perpendicular to the fore and aft direction whereby, upon a rear impact

of a vehicle in which the arrangement is mounted,  the pivotal attachment allows the headrest to move in a forward direction toward the head of an occupant of the vehicle seat;

a target pivotally mounted to the seatback  along a pivotal axis generally perpendicular to the fore and aft direction underneath the headrest and operatively associated with the headrest wherein loading of the target, in the aft direction from the rear impact causes the headrest to pivot forwardly; and

a spring operatively associated with <u>seatback frame</u> biasing the headrest against pivotal movement.

Claim 59

An arrangement as described in claim 57 wherein the headrest is separated from the seatback by a <u>post.</u>

Claim 88

An arrangement as described in claim 59 wherein the <u>seatback frame</u> comprises a cross member; and wherein the <u>post</u> is operatively connected to the cross member to translate and pivot relative to the cross member as the headrest pivots.

Claim 90

An arrangement as described in claim 88 wherein the post is operably connected to the cross member by a <u>bushing.</u>


'043  CLAIM 94 (dependent from claim 57)

57.  A vehicle seat and headrest arrangement comprising;

a seat bun frame having fore and aft ends;

a <u>seatback frame</u> joined to the bun frame adjacent the aft end of the bun frame;

a headset pivotally attached with the seatback frame along a pivotal axis generally perpendicular to the fore and aft direction whereby, upon a rear impact of a vehicle in which the arrangement is mounted,  the pivotal attachment allows the headrest to move in a forward direction toward the head of an occupant of the vehicle seat;

a target pivotally mounted to the seatback  along a pivotal axis generally perpendicular to the fore and aft direction underneath the headrest and operatively associated with the headrest wherein loading of the target, in the aft direction from the rear impact causes the headrest to pivot forwardly; and

a spring operatively associated with seatback frame biasing the headrest against pivotal movement.

Claim 94

An arrangement as described in claim 57 wherein the pivotal axis of the headrest is oriented between the headrest and the target.

* * * * *

 (a) Construction of "seatback frame".

Defendant's proposed construction is "A rigid body structure that substantially surrounds the perimeter of the seatback to provide structural support for the backseat."  Plaintiff contends "plain meaning applies and no construction is necessary," alternatively proposing "A rigid structure that supports the seatback".

The patent specification at col. 1, lines 38-42 says " . . . seatback frame 2 is generally in the shape of an inverted U having two risers or sides 22 joined by a cross  member 4. Typically the seat bun and the back frames 3,2 will be made from steel, metallic  or other structural members." Nowhere in the specification is the seatback frame characterized as "substantially  surrounds the perimeter of the seatback ." Defendant's proposal to do so is unjustifiably narrowing and is rejected.

Accordingly, "seatback frame" is construed "A rigid structure that supports the seatback."

(b)   Construction of "seatback frame is shaped as inverted U".

Defendant proposes the construction "seatback frame has two side members connected at the top by a cross member, but unconnected at the bottom". Plaintiff contends "plain meaning and no construction necessary."

Consistent with the patent specification noted in (a) above, the construction is as follows: "seatback frame is shaped as an inverted U having two risers or sides joined by a cross frame member." Defendant's proposal to add "unconnected at the bottom" is unjustified and is rejected. Such language is found nowhere in the specification and, furthermore improperly narrows the claim scope.

(c) Construction of "post."

The word "post" is used numerous times in the specification and is identified as numerals 8 and 30 in the drawings. Defendant proposes that "post" be construed as "an extension, pillar or leg that extends downwardly from the headrest." Plaintiff asserts "plain meaning" and "no construction is necessary".

The specification does not define or characterize "post" beyond what is shown clearly in the drawings and is implicit in the specification text. _E.g._ the drawings , FIGS 2 and 4, show that the posts are cylindrical and fit through a circular hole. "Post" is a common word and all five figures of the drawings show where the posts are located. Defendant seeks to add the words "extension. pillar or leg" to the construction, words not associated with "post" in the specification. Defendant's proposal is unjustified.  "Post" needs no construction.

(d) Construction of "a bushing."

The word "bushing" appears only once in the specification at col 2, lines 14-16 thus: " . . . posts 30 are held to the cross member 4 by penetration through an elastomeric bushing 42 which is mounted in a clip 32 which is fitted on the cross member 4", clearly illustrated in Fig 4.  Compromising somewhat differing

proposals of the parties, the construction of "a bushing" is: "a lining for an opening to resist abrasion or serve as a guide."

   (e)  Construction of "seatback frame comprises . . . a cross [frame] member"

      Defendant proposes the construction "The cross [frame] member is part of the seatback frame, and is a member that crosses from one side of the frame to the other." Plaintiff objects noting that the claim language, e.g claim 45, which states "seatback frame comprises a cross member" is redundant to saying "The cross [frame] member is part of the seatback frame." Plaintiff is correct and, as understood, defendant does not disagree. As for the proposed phrase "is a member that crosses from one side of the frame to the other," plaintiff responds that while the claim does not recite "crosses from one side of the frame to the other," nothing in the specification compels it to do so. Furthermore, the specification nowhere says that the "member crosses from one side to the other" and defendant does not contend otherwise.

      According, no construction of the claim is necessary.

  '049 patent; (claims asserted 4 and 17)

'949  CLAIM 4 (dependent from claims 1 and 3)

Claim 1

A vehicle seat and headrest arrangement for use with a seat having a seatback in a vehicle, the vehicle seat and headrest arrangement comprising:

a headrest arrangement including a headrest, an impact target and one of a guide member and a follower;

a seatback having the other one of a guide member and follower, the guide member having a guideway and the follower extending laterally and engaging the guideway of the guide member such that upon impact ol the vehicle a rearward load by the occupant upon the impact target will cause the follower to engage the guideway in such a manner to cause the headrest to be moved in a first manner and a second manner to support a head of an occupant.

Claim 3

The vehicle seat and headrest arrangement of claim 1 wherein the guideway has a first guideway wall and a second guideway wall and the follower has a first follower portion and a second follower portion which engage the first guideway wall and the second guideway wall respectively to cause the headrest to move in the first manner and the second manner to support the head of the occupant.

Claim 4

The vehicle seat and headrest arrangement of claim 3  wherein the second guideway wall has a first contact portion and a second contact portion and second follower potion has a  first surface portion and a second surface portion such that upon impact in the vehicle the first surface portion slidingly engages the first contact portion while the first follower portion slidingly engages the first guideway wall so as to cause the headrest to move in the first manner before the second surface portion slidingly engages the second contact portion as the first follower portion continues to slidingly engage the first guideway wall so as to cause the headrest to move in the second manner.


'949  CLAIM 17  (depends from claims 12 and 16; only claims 12 and 16 contain disputed construction which is underlined and set out and  below)

Claim 12.

A vehicle seat and headrest arrangement for use with a seat having a seatback in a vehicle, the vehicle seat and headrest arrangement comprising:

 a headrest arrangement including a headrest and a headrest extension, the headrest extension having one of a guide member and a follower and an impact target located below the one of a guide member and a follower; . . . .


Claim 16. The vehicle seat and headrest arrangement of claim 12  wherein the guide member is fixedly attached to the seatback frame. . . .

* * * * *

(f) Construction of " a headrest arrangement including a headrest and a headrest extension, the headrest extension having one of a guide member and a follower and an impact target located below the one of a guide member and a follower"

The genesis of the claim phrase in dispute is at specification col. 5, lines 66-67 to col. 6, lines 1-2 . . . "As shown, headrest arrangement 14 includes headrest 22 having cushion frame 23, headrest extensions 24 extending downwardly therefrom, and impact target 26 to which extension 24 extends." Read naturally and in the context of the invention, the sentence structure including punctuation, treats the "headrest", "headrest extensions", and "impact target" as separate elements of the "arrangement." This is re-enforced in lines 2-24 of col. 6 which also treats the above components as separate elements.

Defendant disagrees and proposes a construction in which the "headrest extension includes an impact target." If this were the case, lines 12-15 of col. 6 would not make sense. . . "As depicted in FIGS 2 and 3, headrest extension 24 extends downwardly . . . to an impact target 26."

Accordingly, the claim construction is: "The headrest arrangement includes: a headrest, a headrest extension having one of a guide member and a follower, and an impact target."


'733 patent; (claims asserted 15)

'733  CLAIM 15 (depends from claims 10 and 14)

Claim 10

A vehicle seat and headrest arrangement for use with a seat having a seatback in a vehicle, the vehicle seat and headrest arrangement comprising:

a headrest arrangement  including a headrest, the headrest arrangement having at least one impact target and at least one of a guide member and a follower;

the <u>seatback</u> having the other at least one of a guide member and follower, the guide member having a guideway and the follower extending laterally and engaging the guideway of the guide member such that <u>upon</u> <u>impact to the</u> <u>vehicle one of a rearward load by the occupant upon the impact target and the forward inertia of the headrest irrespective of whether occupant is in contact with the seatback will cause the follower to engage the guideway in such manner as to cause the headrest to move in a manner so as to support a head of an occupant</u>.

Claim 14

The vehicle seat and headrest arrangement of claim 10 wherein the guideway has a first guideway wall and a second guideway wall and the follower has a first follower portion and a second follower portion which engage the first guideway wall and second guideway wall respectively to cause the headrest to move in a first manner and a second manner so as to support the head of an occupant.

Claim 15

The vehicle seat and headrest arrangement of claim 14 wherein the second guideway wall has a first contact portion and a second contact portion and the second follower portion has a first surface portion and a second surface portion such that upon impact to the vehicle, the first surface portion slidingly engages the first contact portion while the first follower portion slidingly engages the first guideway wall so as to cause the headrest to move in a first manner before the second surface portion slidingly engages the second contact portion as the first follower portion continues to slidingly engage the first guideway wall so as to cause the headrest to move in a second manner.

* * * * * *

(g) Construction of "seatback"

By agreement of the parties, construction of "seatback" is unnecessary.

(h) Construction of "that upon impact to the vehicle one of a rearward load by the occupant upon the impact target and the forward inertia of the headrest irrespective of whether occupant is in contact with the seatback will cause the

follower to engage the guideway in such manner as to cause the headrest to move in a manner so as to support a head of an occupant."

The parties agree that the '733 patent addresses front- end as well as rear-end collisions. In particular, col. 5 through col. 10, line 10 describes technology related to rear- end collisions. Col. 10, lines 11-52 addresses front impacts with reference to FIGS 2-4. Col. 10, line 53 addresses FIGS 5-6 which depict "another embodiment which operates similar to the embodiment described above". Fig 5 is a "perspective view of another embodiment of the variable pivot mechanism in accordance with the present invention." Fig 6 is a "cross sectional view of the *embodiment in FIG 4* taken along lines 6-6." [should say FIG 5; FIG 4 shows no "lines 6-6;" FIG 5 does so show]. FIG 7 is a "flow chart of one method of providing head support with a movable headrest of a vehicle seat to a vehicle occupant during rebound from a front impact of the vehicle."

It is unnecessary to elaborate on the technical differences between the embodiments described at col. 5 through col.10, line 52, noted above, and the embodiment of FIGS 5 – 6, except to point out that the FIGS 5 - 6 embodiment has, among other things, a modified bushing structure (cf. FIG 2 with FIG 5} and cam structure (cf. FIG 3 with FIG 6.) Suffice it to say that the technology in the FIGS 5-6 embodiment, with design numbers between 110 and 144, similar to elements 10 to 44 from FIGS 1 – 4 of the first embodiment, addresses front-end collisions.

Re claim construction, the phrase in dispute is awkward and merits construction, despite plaintiff's assertion of "plain language." Defendant proposes that the phrase be construed: "Deployment will occur when a rearward load by the occupant is applied to the impact target. Deployment will also be caused by forward inertia of the headrest irrespective of whether occupant is in contact with the seatback." Plaintiff proposes: "upon impact to the vehicle, either a rearward load by the occupant upon the impact target or the forward inertia of the headrest will cause the follower to engage the guideway in such a manner as to cause the headrest to move so as to support a head of an occupant."

As understood, the substance of the disputed phrase addresses the alternative between a rearward-load impact event and a forward-inertia-of-the-headrest impact event on the guideway-follower action to support an occupant's head. Plaintiff's proposal stays true to the meaning and form of claim 10, as understood, and is accepted.

Accordingly, the construction is: "upon impact to the vehicle, either a rearward load by the occupant upon the impact target or the forward inertia of the headrest, will cause the headrest to move so as to support a head of an occupant."

357  patent (claims 1, 4, 5, 18 and 19 asserted)

'357   CLAIMS 1, 4 and 5

Claim 1

A vehicle seat comprising:

a seatback frame for supporting a back of an occupant;

a head restraint extending from the seatback frame for supporting a head of the occupant;

a linkage operably connected to the seatback frame to collectively provide <u>a four-bar mechanism,</u> the linkage being operably connected to the head restraint for receiving an input force from the occupant in response to an impact condition, for consequently actuating the head restraint to an actuated position;

and a biasing member cooperating with the <u>four- bar mechanism</u> for maintaining the head restraint in a design position in absence of an impact condition;

wherein the <u>four- bar mechanism</u> provides a mechanical advantage to overcome the biasing member and maintain the head restraint in the actuated position with an input force less than that provided during the impact condition without an additional locking mechanism.

Claim 4

The vehicle seat of claim 1 further comprising a lumbar mechanism mounted to the four- bar mechanism for receiving the input force from the occupant for actuating the four- bar mechanism.

Claim 5

The vehicle seat of claim 1 wherein the head restraint is pivotally and slidably connected to the seatback frame.

'357 CLAIMS 18,19

Claim 18

A vehicle seat comprising:

a seatback frame for supporting a back of an occupant;

a head restraint extending from  the seatback frame for supporting a head of the occupant;

a first link pivotally connected to the seatback frame;

a second link pivotally connected to the first link;

a third link pivotally connected to the second link and the seatback frame, the third link being operably connected to the head restraint; and

a biasing member cooperating with one of the first, second and third links for maintaining the head restraint in a design position in absence of an impact condition;

wherein one of the first link and second link cooperates with the vehicle seat for receiving an input force from the occupant in response to an impact condition for actuating the first, second and third links, for consequently actuating the head restraint to an actuated position; and

21

wherein the first and second <u>links</u> approach an inline orientation in the actuated position to distribute a return force from the biasing member to the frame so that the head restraint is maintained in the actuated position with an input force less than that provided during the impact condition.

Claim 19

The vehicle seat of claim 18 wherein the first second and third <u>links</u> collectively provide a mechanical advantage to overcome the biasing member and maintain the head restraint in the actuated position with an input force less than that provided during the impact condition without an additional locking mechanism.

* * * * * *

(i) Construction of "four-bar-mechanism", "link "and "bar."

The above-identified terms are related and considered together.

The abstract of the patent is the starting point:

ABSTRACT

A vehicle seat is disclosed with a seatback frame for supporting the back of an occupant. A head restraint extends from the seatback frame for supporting the head of the occupant. *In one embodiment, a four- bar mechanism is operably connected to the seatback frame and the head restraint for receiving an input force from the occupant in response to an input condition, and for consequently actuating the head restraint. In another embodiment, the four-bar mechanism locks the head restraint in the actuated position in response to an input force of the occupant resting against the seatback.*

The "four-bar-mechanism" is described in detail at col.2, line 30 to col.3 line 4:

"With reference to FIGS 1-4, the linkage 24 is described in further detail. The linkage 24 may be a four-bar mechanism, such as a four-bar link mechanism as illustrated in the embodiment of FIGS 1-4. The linkage 24 includes a lower link 34 which is pivotally connected to the frame 18 . . . *The lower link 34 may be a cold- formed metal component such  as a wire or rod, a stamping, a molded or cast*

*component , or any suitably manufactured component.* . . The lower link 34 may terminate at its distal ends with lateral extensions 40 that each provide a pivotal connection with a coupler link 42 at each lateral side of the linkage 24  . . . *The coupler links 42 may be formed from any suitable manufacturing method such as a cold forming operation, including, stamped steel.* The upper end of each coupler end 42 is pivotally connected to upper link 44 at pivotal connection 46 . . . *The upper links 44 may also be formed from a cold-forming operation, such as stamping steel, or any suitable manufacturing method. . . As will be discussed in detail further, the links 34, 42, 44 and the frame 18 collectively provide a four-bar mechanism, such as a four-bar linkage for actuation of the active head restraint mechanism  22."*

Fig 5 is a "schematic" showing clearly the relationship of the linkages above described.

Thus, the specification and drawings show (a) the linkages which make up the four-bar-mechanism and (b) the materials and/or methods by which constructed.

Against this backdrop, defendant proposes that "bar" be construed "an elongated rigid rod"; that "link" be construed "a rigid member used for connecting two structures"; and "four-bar-mechanism" be construed "four rigid bars pivotally connected to each other to form a closed loop and to move in parallel planes." Plaintiff opposes and urges: "bar" . . . Plain meaning applies, no construction necessary"; "link" . . . "Any suitable component, such as a metal wire or rod, a stamping, a molded or cast component"; "four-bar-mechanism" . . . a mechanism that includes  four connected bars or links for transferring force".

As for "bar", plaintiff points out that defendant "seeks construction of a word  that does not appear in the claims," which is taken to mean "appear *alone* in the claims".  Further plaintiff says, "Because the term 'four-bar-mechanism' [the only place where "bar" appears] is already at issue . . . inquiry as to the word 'bar,' by itself, is unnecessary and inappropriate." This observation is deemed correct. As for "link" and "four-bar-mechanism", it is clear that the patentees have acted as their own lexicographer in defining the nature and composition of the elements of their "four-bar-mechanism", permitted by undisputable

authority, *Irdeto Access, Inc. v Echostar Satellite Corp.* 383 F 3d 1295( Fed. Cir. 2004) and authority cited therein, "(It is well established that patentee can act as his own lexicographer so long as he clearly states any special definition of the claim terms in the specification or file history.")  Defendant's citations to technical literature re the meaning of "four-bar-linkages" (McGraw-Hill Dictionary of Scientific and Technical Terms, and a University of Illinois article entitled "Dynamics, Four-Bar Linkages") are interesting in their definitions but are trumped by patentees' lexicography approach.

Accordingly, the construction is as follows: "bar" alone, not construed; "link" . . ." any suitable component , such as a metal wire or rod, a stamping, a molded or cast component"; "four- bar -mechanism" . . .  "mechanism  that includes four connected bars or links for transferring force."

'818 patent; (claims asserted 2)

'818  CLAIM 2 (dependent from claim 1)

Claim 1

A vehicle seat assembly comprising:

a seatback frame comprising:

a pair of side frame members disposed in an upright orientation and spaced horizontally relative to one another, an upper cross member extending horizontally between the pair of side frame members, and

a <u>lower cross member</u> extending horizontally between the pair of side frame members with at least one cam surface formed therein;

an active head restraint system operatively supported by the seatback, the active head restraint system comprising:

an upper armature moveably mounted to the seatback frame and disposed proximate the upper cross member of the seatback frame, the upper armature comprising:

a cross bar disposed horizontally, and multiple posts spaced on the cross bar and extending upright therefrom,

a head restraint mounted to an upper end of each post of the upper armature to be disposed proximate to a head and neck area of an occupant, such that movement of the cross bar consequently moves the post and the head restraint  from the upright position toward the head and neck area of the occupant at  an operative position and a

lower armature disposed below and operatively attached to the upper armature, the lower armature being operable to move rearward, and to act upon the upper armature to transfer forces to the upper armature in response to a predetermined force from the occupant on the lower armature, to move the head restraint toward the head and the neck of the occupant, the lower armature comprising:

an impact body oriented generally upright, the impact body including a lower end disposed proximate  to a pelvic area of the occupant, the impact body being movable in relation to the seatback frame such that force from the occupant generated during a rear end collision is transfered from the impact body to the lower armature as the impact body is moved rearward,  a transverse bar cooperating with the at least one cam surface of the lower cross member of the frame, and at least one transfer member operatively connected to the transverse bar and the upper armature, to move and act upon the upper armature and to slide the transverse bar along the cam surface in response to a predetermined force applied to the impact body to move the head restraint toward the occupant; and a biasing member operatively mounted to the active head restraint system and the seatback frame to bias the upper armature toward the upright position in absence of the predetermined force.

Claim  2

The vehicle seat assembly of claim 1 wherein the active head restraint system further comprises at least one tab connecting the at least one <u>transfer member</u> to the upper armature .

\* \* \* \* \* \*

(j) Construction of terms "cross bar" and "lower cross member"

The disputes regarding these terms are related and will be considered together.

Defendant contends "cross bar" should be construed " A horizontal bar that crosses the seatback from one side to the other side of the frame"; and "lower cross member" should be construed "A horizontal member that crosses the seatback from one side to the other side of the frame at or near the bottom of the frame". The dispute is over the phrase "from one side to the other side of the frame." Plaintiff agrees that the "bar" and "member" extend "between the side frames" but not always all the way from side to side, and thus the defendant's construction unjustifiably narrows the claim scope. Plaintiff cites specific examples of representative embodiments and appears to be correct and justified in the objection.

Accordingly, the construction of "cross bar" is: "A horizontal bar that extends between the two side frame members."  The construction of "lower cross member" is: A horizontal member that extends between the two side frame members at or near the bottom of the frame."

(k) Construction of "predetermined force"

By agreement of the parties, construction of "predetermined force " is unnecessary.

(l)  Construction of "transfer member"

Defendant contends that "transfer member" should be "interpreted under 35 U.S.C.§ 112 ¶6 because it "fails to recite any word that connotes structure, but instead recites only a function ("transfer") with a nonce word ("member")."

For starters, "member" is not a "nonce word", *i.e.* " a word or phrase coined for one occasion." Oxford Dictionary of Current English, Third Edition. Rather "member" is a common word of structure, viz. "a part of a complex *structure*." Oxford Dictionary.

Furthermore, plaintiff objects to "transfer member" being characterized as a mean-plus- function element pursuant to 35 U.S.C.§ 112 ¶6.   ". . .where a claim does not recite the word 'means' . . . there is a *presumption against* the application of 35 U.S.C.§ 112 ¶6" , citing *Williamson  v Citrix Online LLC*, 792 F3d 1339 (Fed.Cir. 2015) which focuses on whether the claim recites sufficient structure for those skilled in the art to understand how the functions involved are accomplished.

Here, the inquiry is whether the claim phrase "transfer member operatively connected to the transverse bar and the upper armature"  identifies sufficient structure to perform the "function" involved, i.e." to move and act upon the upper armature and to slide the transverse bar . . ." to transfer  the forces involved.  As plaintiff points out, "The specification "identifies linking rod 122 as the structure for transferring forces from their lower armature to the upper armature." Defendant apparently agrees. (Defendant's Opening Claim Construction Brief, p.22, box entitled "Defendant's Proposed Construction".)

Defendant's proposed construction re 35 U.S.C.§ 112 ¶6 is rejected.


Respectfully submitted,

James F. Davis,  Special Master