UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEAR CORPORATION,

     Plaintiff,

v.

NHK SEATING OF AMERICA INC.,
NHK SPRING COMPANY, LIMITED, and
NHK INTERNATIONAL INC.,

     Defendants.

Case No. 2:13-cv-12937
Honorable Laurie J. Michelson

---

**OPINION AND ORDER GRANTING LEAR'S MOTION TO AMEND
INFRINGEMENT CONTENTIONS [154]**

---

Lear Corporation holds several patents directed toward an active headrest restraint system. Basically, these patents protect an invention that transfers force from one part of an occupant's seat to another during a car crash. More specifically, the invention uses the force that the occupant's back places against the seatback during a crash to move the headrest toward the occupant's head, thus reducing whiplash during the crash. Lear believes that three related companies, NHK Seating of America, NHK Spring Company, and NHK International, make an active headrest restraint system that infringes its patents. So Lear sued the NHK entities.

This case has a long history; at issue now is Lear's request to make a single amendment to its final infringement contentions, i.e., its allegations as to how, specifically, the accused product infringes its patent. Under this Court's case-management order for patent cases, infringement contentions usually become "final" about six months into the case. After that, the patent holder must demonstrate that it has "good cause" for amending its contentions and that the amendment will not result in "unfair prejudice." As will be explained, the Court finds that Lear has made the

two showings. So the Court will allow Lear to make a single amendment to its infringement contentions.

## I.

### A.

To appreciate the infringement- and invalidity-contention requirements, it may be helpful to provide a little context. A patent consists of a written description of the invention followed by one or more claims. *See* 35 U.S.C. § 112 (pre-AIA). To oversimplify a bit, a claim lists the invention's parts and their connections; each item in the list is called a "limitation." *See Dawn Equip. Co. v. Ky. Farms Inc.*, 140 F.3d 1009, 1015 n.1 (Fed. Cir. 1998) (providing that the preferred term is "limitations," not "elements"). A product infringes the claim of the patent if the product has (or in patent parlance "meets") each limitation of the claim. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1273 (Fed. Cir. 2004).

But patent-infringement complaints, requiring only a "short and plain statement of the claim," Fed. R. Civ. P. 8, usually do not identify how the defendant's multi-part device meets each of the many limitations of the patent's claims.

Enter infringement contentions. Infringement contentions, with their associated claim charts, effectively match up the limitations of a patent's claim with the parts of an accused device such that the accused infringer knows, specifically, why the patent holder thinks the device infringes the claim. (*See* ECF No. 43, PageID.424.)

Invalidity contentions serve a similar purpose. Often when a patent holder asserts that a product infringes a claim of its patent, the accused infringer turns around and says that the asserted claim is not valid. One common way that an accused infringer invalidates a patent claim is by showing that the invention described by the claim is not new or, if it is technically new, it is an

obvious extension of things in existence. *See* 35 U.S.C. §§ 102, 103. In showing that the invention is not new (or is an obvious extension), the accused infringer also plays a matching game: it matches up parts of earlier inventions with limitations of the patent claim to show that every limitation of the claim was already invented. (Again, oversimplifying slightly.)

There are several other ways that a patent claim can be invalid and two are particularly relevant to the motion now before the Court. For one, a patent claim is invalid if the written description of the invention does not "reasonably convey[] to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc); *see also* 35 U.S.C. § 112 ¶ 1 (pre-AIA). And a patent claim is also invalid if its language does not adequately demarcate the exclusive territory, i.e., the claim language is indefinite. *See* 35 U.S.C. § 112 ¶ 2 (pre-AIA); *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014) (providing that claim must "inform those skilled in the art about the scope of the invention with reasonable certainty").

So the Court requires the parties to serve infringement and invalidity contentions to force each side to show its cards: the patent holder shows in detail how the accused device meets each claim limitation and the accused infringer shows in detail how the claim is invalid. *LookSmart Grp., Inc. v. Microsoft Corp.*, No. 17-04709, 2019 WL 7753444, at *2 (N.D. Cal. Oct. 17, 2019) ("The purpose of [infringement and invalidity contentions] is to . . . provide all parties with adequate notice of and information with which to litigate their cases." (internal quotation marks omitted)). But the Court did not only want the parties to show their cards; it wanted the parties to do so early in the game. Early disclosure helps shape discovery, claim construction, summary judgment, and, ultimately, trial. *See Magna Donnelly Corp. v. 3M Co.*, No. 07-CV-10688, 2012 WL 12930956, at *4 (E.D. Mich. Feb. 1, 2012) (Michelson, M.J.) ("The purpose of infringement

and invalidity contentions is to hasten resolution on the merits by providing structure to discovery and enabling the parties to move efficiently toward claim construction and the eventual resolution of their dispute." (internal quotation marks omitted)); *Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 527 (E.D. Tex. 2005) ("Specific theories create a specific trajectory for the case."). And to ensure that the aims of early, detailed disclosure were not undermined, it made sense to restrict the parties' ability to swap out their cards for new ones late in the game. *See Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 236 F. Supp. 3d 1110, 1113–14 (N.D. Cal. 2017) ("The Patent Local Rules are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." (internal quotation marks omitted)); *accord Sloan Valve Co. v. Zurn Indus., Inc.*, No. 10-204, 2013 WL 622951, at *2 (N.D. Ill. Feb. 20, 2013).

This Court's case-management order for patent cases accomplishes the above aims through the following requirements. Two weeks after initial disclosures, the patent holder is required to serve the accused infringer with its *initial* infringement contentions. (ECF No. 43, PageID.423.) The accused infringer then has two weeks to respond to the infringement contentions. (In the Court's case-management order, the response is called "Non-infringement Contentions" (ECF No. 43, PageID.425); but to avoid confusion in this opinion, the Court will only use the word "contention" in association with infringement and invalidity contentions, not the parties' responses to those contentions.) Along with its response to infringement contentions, the accused infringer is required to serve its *initial* invalidity contentions. (ECF No. 43, PageID.425.) The patent holder then has two weeks to respond to the invalidity contentions. (*Id.* § 2.5.) Then, 21 weeks after the initial infringement contentions have been served, both sides are required to serve their *final* contentions. (ECF No. 43, PageID.427.) The exchange is simultaneous. (*Id.*) These final

contentions can be amended "only by order of the Court upon a showing of good cause and absence of unfair prejudice to opposing parties, made within 14 days upon discovery of the basis for the amendment." (ECF No. 43, PageID.428.) So within a month or two of the start of the case, both sides get a good idea of each other's theories through the exchange of initial contentions; and by about six months, those theories are crystalized, with limited opportunity to change them.

**B.**

With that background, the Court turns to the facts relevant to Lear's motion to amend its final infringement contentions.

In July 2013, Lear sued NHK Seating of America (NSA). (ECF No. 1.) Lear claimed that NSA's active headrest restraint systems infringed the claims of several of its patents, including U.S. Patent No. 7,455,357 ('357 patent). (*See* ECF No. 1, PageID.6–7.)

Claim 1 of the '357 patent includes several limitations. One limitation involves a "four-bar mechanism." In particular, claim 1 states in part, "A vehicle seat comprising: a seatback frame for supporting a back of an occupant; a head restraint extending from the seatback frame for supporting a head of the occupant; a linkage *operably connected* to the seatback frame to collectively provide a *four-bar mechanism* . . . ." *See* U.S. Patent No. 7,455,357 col. 5, ll. 63–65, col. 6, ll. 1–2 (filed Oct. 4, 2006) (emphases added).

The '357 patent includes a schematic of a four-bar mechanism:



*Fig. 5*

This schematic shows a "before and after," in particular, how links 34 (red), 42 (green), and 44 (blue) of the four-bar mechanism move when force is applied. Links 34, 42, and 44 are connected to one another at pivot points 40 and 46. Before force F is applied to link 42, the configuration of the four-bar mechanism is as shown on the left portion of the picture. After force F is applied to link 42 (e.g., when the occupant's back places force against the seat during an accident), the four-bar mechanism is reconfigured to what is shown in the right portion of the picture. Because links 34 (red), 42 (green), and 44 (blue) of the four-bar mechanism are pivotally connected to each another (at pivot points 40 and 46), when force F is applied to link 42, it causes link 34 to rotate around point 36 and link 44 to rotate around point 50. This, in turn, causes the headrest (not shown) to move.

In October 2017, NSA served its final invalidity contentions on Lear. (*See* ECF No. 154-7, PageID.5496.) As to claim 1 of the '357 patent, NSA contended that the patent was invalid "for lack of written description under 35 U.S.C. § 112 ¶ 1." As noted, § 112 ¶ 1 requires an inventor to "reasonably convey[] to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351

(Fed. Cir. 2010) (en banc). NSA's final invalidity contentions asserted that claim 1 of the '357 patent was invalid for lack of written description of the claim term "operably connected." (ECF No. 154-7, PageID.5495.)

Also in October 2017, Lear served its final infringement contentions on NSA. (ECF No. 154-5, PageID.5477.) (Technically, these were amended final contentions, but that amendment is not relevant to the present dispute.) Lear's final infringement contentions included pictures of NSA's active headrest restraint system. And on the pictures, Lear identified where it believed the "four-bar mechanism" limitation of the '357 patent was found on NSA's product. Lear did so by using the labels "First link," "Second link," and "Third link":





(ECF No. 154, PageID.5482–5483; *see also* ECF No. 154, PageID.5479.)

In February 2018, Lear filed a separate suit against Japanese entities NHK Spring Company and NHK International asserting that those two entities also infringed its patents, including the '357 patent. *See Lear Corp. v. NHK Spring Co.*, No. 18-10613 (E.D. Mich. filed Feb. 21, 2018). A couple months later, Lear moved to consolidate the two cases. (*See* ECF No. 88, 95.) In March 2019, the Court denied the motion without prejudice to refiling. *Lear Corp. v. NHK Seating of Am. Inc.*, No. 13-12937, 2019 WL 1242444, at *2 (E.D. Mich. Mar. 18, 2019). The parties ultimately agreed to consolidate the two cases for purposes of discovery and summary judgment. (ECF No. 140.)

Several aspects of the parties' April 2019 stipulation to consolidate are worth highlighting. Under the parties' stipulation, except for two exceptions not now relevant, Lear expressly agreed

"to be bound" by the infringement contentions it served on NSA in October 2017. (ECF No. 140, PageID.5295.) As part of the stipulation to consolidate, all parties—Lear and all three NHK entities—agreed to a comprehensive schedule for the remainder of the consolidated case. Notably, that schedule did *not* include dates for the exchange of infringement or invalidity contentions. (*See* ECF No. 140, PageID.5296–5297.) The case was consolidated in June 2019. (ECF No. 141.)

In October 2019, a dispute over the schedule arose. All parties agreed that the case needed (yet) another new schedule due to delays in facilitation and depositions in Japan. (ECF No. 151, PageID.5343.) But the parties disagreed as to what events should be included on the new schedule. NHK wanted to serve Lear with its own invalidity contentions and response to Lear's infringement contentions, i.e., it wanted to take positions different from those taken by NSA. (ECF No. 151, PageID.5344.) NHK pointed out that under the parties' stipulation to consolidate, Lear had agreed to be bound to its infringement contentions, but it had made no similar agreement. (ECF No. 151, PageID.5348.) For its part, Lear stressed that when the cases were consolidated, the agreed-upon schedule did not include dates for the exchange of infringement or invalidity contentions. (*See* ECF No. 151, PageID.5346.) Lear further argued that allowing NHK to serve its own invalidity and non-infringement contentions would result in prejudice: "Lear would be prevented from seeking testimony from NHK . . . regarding such untimely contentions." (*Id.*)

The Court held a telephone conference to address this and other disputes. In addressing NHK's request to serve its own contentions, the Court focused on Lear's claim of prejudice: the timing of NHK's new invalidity contentions in relation to the then-upcoming depositions in Japan. The Court directed NHK to serve Lear with its contentions by November 18, 2019, i.e., in time for the depositions.

Consistent with this Court's direction, on November 18, 2019, NHK served Lear with its first and final invalidity contentions and response to Lear's infringement contentions. Like NSA, NHK's invalidity contentions asserted that claim 1 of the '357 patent was invalid. But whereas NSA had relied on § 112 ¶ 1, NHK relied on § 112 ¶ 2. That is, while NSA had argued that the '357 patent lacked adequate written description for the term "operably connected" in claim 1, NHK argued that the term "four-bar mechanism" in claim 1 was "indefinite as applied by Lear." (ECF No. 154-2, PageID.5430.) NHK explained, "Lear contends that the recited 'four-bar mechanism' even covers a six or seven 'link' mechanism for transferring force. This application of the claim renders it indefinite." (ECF No. 154-2, PageID.5430.)

On January 13, 2020, Lear notified NHK (and, apparently, NSA too) that it believed it was entitled to serve new infringement contentions in response to NHK's new assertion of invalidity. (ECF No. 156, PageID.5532.) NHK (and, apparently NSA too) did not agree. The Court attempted to reach a resolution short of motion practice. (*See* ECF No. 153.) But the parties remained at an impasse.

So on February 3, 2020, Lear filed the motion to amend its final contentions that is the subject of this opinion. As in the final infringement contentions it had served NSA back in 2017, Lear maintains that the accused active headrest restraint product meets the "four-bar mechanism" limitation of claim 1 of the '357 patent as shown above and reproduced here for convenience:



But Lear seeks leave to "identif[y] an alternative four-bar mechanism" on the accused device. (ECF No. 54-8, PageID.5498.) In particular, Lear seeks to amend its infringement contentions to identify different first, second, and third links of the four-bar mechanism on NHK's device:



(ECF No. 154-8, PageID.5501.) Not only does Lear seek to include this new infringement theory as part of its infringement contentions, Lear also seeks to add this theory to its response to NHK's invalidity contentions. (ECF No. 157, PageID.5541 n.3.)

**II.**

Under this Court's case-management order, a party may amend its final infringement contentions "only by order of the Court upon a showing of good cause and absence of unfair prejudice to opposing parties, made within 14 days upon discovery of the basis for the amendment." (ECF No. 43, PageID.428.)

This Court's case-management order for patent case is based on the local patent rules for the Northern District of Illinois (with some modifications based on the local patent rules of both the Northern District of California and the District of Utah). (*See* ECF No. 43, PageID.419 (explaining source of the case-management requirements).) Courts in that judicial district have stated that "good cause" requires the party seeking amendment to not only show that "a valid basis for amendment exists" but also that it "acted diligently." *Oleksy v. Gen. Elec. Co.*, No. 06-1245, 2013 WL 3944174, at *2 (N.D. Ill. July 31, 2013). And in that district, the party seeking amendment has the burden of "establishing [both] diligence and lack of prejudice" to the opposing party. *Id.* Whether "a party has established the good cause requirement is within the sound discretion of the district court." *Id.*

**III.**

**A.**

Lear has "good cause" to amend its infringement contentions to identify an alternative "four-bar mechanism" in the accused active headrest restraint system.

Start with the fact that but for NHK's invalidity contentions, Lear would not have asked to amend its infringement contentions. Lear served its final infringement contentions on NSA back in October 2017. And there Lear's infringement positions stood, unaltered, as this case progressed for two more years. And in those two years much transpired, including adoption of Lear's

definition of "four-bar mechanism" during claim construction, *see Lear Corp. v. NHK Seating of Am. Inc.*, No. 13-CV-12937, 2018 WL 3062189 (E.D. Mich. June 21, 2018), and denial of NSA's motion for summary judgment, *see Lear Corp. v. NHK Seating of Am. Inc.*, No. 13-CV-12937, 2019 WL 3892547 (E.D. Mich. Aug. 19, 2019). So Lear had no reason to alter its contentions. Then, in November 2019, NHK served a never-before-seen invalidity contention. It was only then that Lear asked to amend its infringement contentions. NHK's new invalidity theory—one that NSA had not raised in the many years this case has been pending—supplies Lear with a pretty good reason for amending its contentions.

But on the unique facts of this case, there is another good reason to allow Lear to amend. Under this Court's case-management order, contentions are served in a specific sequence: the patent holder serves initial infringement contentions, the accused infringer then serves initial invalidity contentions, and many weeks later, both sides simultaneously exchange final contentions. (ECF No. 43, PageID.423–427.) So had NSA raised the indefiniteness claim that NHK now raises in its initial invalidity contentions, Lear would have been able to include its alternative "four-bar mechanism" in its final infringement contentions. Similarly, if (as NHK wanted) the two cases had not been consolidated, the Court would have created a separate schedule for Lear's case against NHK. And that schedule would have included the standard exchange of contentions. And under that schedule, had NHK raised its indefiniteness theory in its initial invalidity contentions, Lear would have been able to include its alternative "four-bar mechanism" in its final infringement contentions. In other words, in the normal course, a patent holder is allowed to serve its final infringement contentions after receiving the accused infringer's initial invalidity contentions. So returning to that normal course from the current state of affairs supplies Lear with additional good cause to amend.

NHK makes a few arguments for why Lear has not demonstrated good cause to amend its contentions. None persuade.

For one, NHK says that "it is well-settled that invalidity contentions are insufficient cause to amend infringement contentions." (ECF No. 156, PageID.5517; *see also* ECF No. 156, PageID.5509.) In support of this "well-settled" proposition of law, NHK cites four cases.

In *Apple Inc. v. Samsung Electronics Co. Ltd.*, Samsung argued that deficiencies in Apple's noninfringement contentions justified it to amend its infringement contentions. *See* No. 12-CV-0630, 2013 WL 3246094, at *2 (N.D. Cal. June 26, 2013). The court was unpersuaded: "[D]eficiencies in Apple's noninfringement theories do not justify Samsung's delay in asserting all of the infringement theories it reasonably believed it could assert." *Id.* at *4. The court explained that the process of "fine tun[ing]" infringement contentions as the case progressed was not intended to be "a running dialogue between the parties, with additions of theories as one side asserts that a particular argument is unsustainable." *Id.* at *3.

NHK also relies on *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 236 F. Supp. 3d 1110 (N.D. Cal. 2017). There, Illumina, a patent holder, "argue[d] that it ha[d] good cause to supplement its infringement contentions with additional . . . theories because of positions asserted by Ariosa in its noninfringement contentions." *Id.* at 1113. The court relied on *Apple* and rejected the notion that Ariosa's "surpris[ing]" noninfringement positions amounted to good cause for Illumina to amend its infringement contentions. *Id.* at 1114. Instead, Illumina needed to show that its amendments were based on new, non-public information; because Illumina had not made that showing, it lacked good cause for amendment. *Id.* at 1115.

NHK's third case, *Fujifilm Corp. v. Motorola Mobility LLC*, has similar facts to *Apple* and *Verinata* and the court followed the reasoning of *Apple* to deny amendment. *See* No. 12-CV-03587-WHO, 2015 WL 757575, at *8 (N.D. Cal. Feb. 20, 2015).

NHK also cites *Northgate Technologies v. Stryker Corp.*, No. 12-07032 (N.D. Ill. Dec. 16, 2013) (order denying motion to amend contentions). There, "Northgate claim[ed] that the positions the Defendants [took] in response to Northgate's final infringement contentions necessitate[d] an amendment by Northgate." *Id.* at 2. The court disagreed; it explained that "the facts [were] the same" as when Northgate served its final infringement contentions and the only thing that had changed was the defendants' legal theory based on those facts. *Id.* at 3.

Each of these four cases differs from this case in material respects. *Apple*, *Verinata*, and *Fujifilm* are decisions from the Northern District of California. That district's local patent rules (including historical versions in effect at the time of those three decisions) do not provide for initial and then final contentions.[1] The patent holder serves infringement contentions once and amendment of those contentions is permitted only upon a showing of good cause and the absence of undue prejudice; effectively, the initial contentions in the Northern District of California are as malleable as final contentions under this Court's order. So *Apple*, *Verinata*, and *Fujifilm* are distinguishable at least because the Northern District of California's local patent rules do not contemplate that patent holders will get to serve final infringement contentions after reviewing the

---

[1] N.D. Cal. Patent L.R. 3-1, 3-3, and 3-6 (Jan. 17, 2017) *available at* https://www.cand.uscourts.gov/rules/patent-local-rules/
  N.D. Cal. Patent L.R. 3-1, 3-3, and 3-6 (Nov. 1, 2014) *available at* https://www.cand.uscourts.gov/rules/superseded-local-rules/
  N.D. Cal. Patent L.R. 3-1, 3-3, and 3-6 (Apr. 2010) *available at* https://web.archive.org/web/20100527202523/http://www.cand.uscourts.gov/CAND/LocalRul.nsf/fec20e529a5572f0882569b6006607e0/5e313c0b7e4cd680882573e20062dbcf/$FILE/Pat4-10.pdf

accused infringers' contentions (invalidity or noninfringement). But, as explained, under this Court's sequenced exchange, the patent holder is able to serve its final infringement contentions after reviewing the accused infringer's initial invalidity contentions.

As for *Northgate v. Stryker*, the patent holder, Northgate, was much less diligent than Lear. There, Northgate amended its complaint to include an indirect infringement theory. *Northgate*, slip op. at 1. Yet Northgate did not seek to amend its contentions to include indirect infringement until almost three months later and after the defendants had served their final non-infringement contentions. *Id.* at 2. And, apparently, Northgate could not explain why it had enough information to amend its complaint to include indirect infringement but had to wait until after the defendants' final noninfringement contentions to try to add indirect infringement to its infringement contentions. *See id.* at 2–3. As compared to Northgate, Lear was much more diligent. True, Lear did wait about two months after receiving NHK's invalidity contentions before it disclosed the details of its alternative four-bar mechanism to NHK. (*Compare* ECF No. 154-2, PageID.5431 (November 18, 2019), *with* ECF No. 156-4, PageID.5536 (January 24, 2020).) But Lear explains that some of the delay was due to counsel's need to be in Japan for depositions as well as the holiday season. (ECF No. 157, PageID.5541 n.1.) And Lear implies that its new infringement contention was not "confirmed" until a January 10, 2020, meeting with its technical expert. (ECF No. 157, PageID.5541 n.2.) Lear disclosed its new theory to NHK 14 days later. (ECF No. 156-4, PageID.5536.) So while Lear should have been more diligent, Northgate demonstrated virtually no diligence.

Although the cases NHK cites do not show that Lear lacks good cause, the Court does agree with NHK that, often, a new invalidity theory will not be "good cause" for amending infringement contentions. For example, if an accused infringer identifies an existing invention in

its final invalidity contentions that it did not include in its initial contentions, and argues that this existing invention renders the claimed invention not new, the patent holder would likely have no need to change its final infringement contentions. Whether the claimed invention is different from the newly identified existing invention is not directly linked to whether the accused device meets all the limitations of the claim.

But here, there is a direct link. NHK's invalidity theory is *based on* Lear's original infringement theory. In NHK own words: "Lear contends that the recited 'four-bar mechanism' even covers a six or seven 'link' mechanism for transferring force. *This application* of the claim renders it indefinite." (ECF No. 154-2, PageID.5430 (emphasis added).) In other words, NHK does not assert that the language of claim 1 of the '357 patent, examined in a vacuum, is indefinite; instead, NHK argues that the way Lear applies the claim language in its infringement contentions shows that the language is indefinite. So NHK's invalidity theory effectively attacks Lear's infringement theory: "if you allege that we infringe in that manner, then the claim is indefinite." Given that NHK's invalidity theory seeks to negate Lear's infringement theory (as opposed to making a stand-alone invalidity theory), Lear has good cause for changing its infringement theory to account for the NHK's theory.

But why isn't the proper solution to limit Lear to responding to NHK's invalidity contention with its new infringement theory? After all, this Court's case-management order contemplates a patent holder will respond to invalidity contentions separate and apart from its infringement contentions. (*See* ECF No. 43, PageID.426.) And allowing Lear to just respond (as opposed to respond and amend its own contentions) could be fair. Under that scenario, Lear could try to stave off having claim 1 of the '357 patent be declared invalid by using its alternative four-bar mechanism but would not be able to use that alternative four-bar mechanism to show that NHK

is liable. In other words, Lear's alternative four-bar mechanism would be strictly a shield, not a sword.

The Court considered this option but, in the end, rejected it. As explained, in the normal course, Lear would be able to review initial invalidity contentions before serving its final infringement contentions. NHK's invalidity contentions are both its initial and final contentions. So Lear should be able to alter its final infringement contentions to account for any indefiniteness theory that appears in NHK's first and only set of invalidity contentions.

NHK makes one other argument against a finding of good cause. NHK says that Lear either forfeited or waived its right to amend its final infringement contentions when it entered into the stipulation to consolidate the two cases. (*See* ECF No. 156, PageID.5509, 5513.)

This argument has some merit but ultimately does not carry the day for NHK. True, in the stipulation to consolidate, only Lear—and not NHK or NSA—expressly stated it would be "bound" by its contentions. (ECF No. 140, PageID.5295.) But it is possible that only Lear expressly agreed to be bound because only Lear had the right to amend in two circumstances. In other words, the stipulation permits Lear to amend in two circumstances, and thus Lear needed to expressly agree to not amend in any other circumstance. Lear's express agreement could therefore be viewed as a preamble to the two situations where it can amend: "Lear is to be bound by its infringement contentions set forth in 2:13-cv-12937, *with the exceptions of . . . .*" (ECF No. 140, PageID.5295.) NSA on the other hand, had no circumstances in which it could amend. So perhaps for that reason, NHK and NSA had no reason to expressly agree to be bound.

And while Lear did make an express representation, NHK may have made an implicit one. As Lear points out, there was a schedule that was part of the stipulation. And that schedule—agreed to by NHK and NSA—did not include the exchange of contentions. (ECF No. 140,

PageID.5296–5297.) So Lear's claim that it thought there would be no further contentions, including no new invalidity contentions by NHK, is believable. As Lear reasonably relied on the implication that there would be no further invalidity contentions from NSA or NHK, but that turned out not to be the case, it would be inequitable to hold Lear to its promise to be bound.

**B.**

That leaves the issue of "unfair prejudice." Here, the Court can be much briefer.

Lear says NHK will not suffer prejudice. It stresses that it is asking to amend its infringement contentions for "only one limitation ('four-bar mechanism') of one claim (claim 1) of the one '357 Patent." (ECF No. 154, PageID.5425.) And Lear explains that when it moved to amend, expert reports on infringement and invalidity were still months away. (ECF No. 154, PageID.5425.) (Those dates are closer now, but that is not Lear's fault.) Further, Lear says that its amendment will not affect the schedule for the case and that it "will not oppose NHK amending, within a reasonable time, its contentions to the extent they" are responsive to Lear's amendment. (*Id.*)

In response, NHK does not specify any prejudice from Lear's amendment. True, NHK says that it relied on Lear's promise to be bound to its infringement contentions in agreeing to consolidate the NHK and NSA cases. (*See* ECF No. 156, PageID.5510 ("To convince NHK and NSA to agree to consolidation, Lear stipulated that it would not change its Final Infringement Contentions."); *see also* ECF No. 156, PageID.5513, 5520–5521.) But NHK does not explain how that reliance results in prejudice. NHK merely says, "Allowing Lear to shift its positions well after the stipulated consolidation was granted with Defendants' concurrence is incurably prejudicial to Defendants." (*Id.*) But how? NHK does not say.

**IV.**

In short, the Court finds that Lear has shown that it has good cause for amending its infringement contentions regarding the "four-bar mechanism" limitation of claim 1 of the '357 patent and that amending that limitation will not result in unfair prejudice to NSA or NHK. Accordingly, within 7 days of this order, Lear shall serve on NSA and NHK the amended infringement contention attached to its motion. (ECF No. 154-8, PageID.5498, 5501.) NSA and NHK will then have 21 days to serve amended non-infringement contentions and, if necessary, amended invalidity contentions.

SO ORDERED.

Dated: April 10, 2020

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE