UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LEAR CORPORATION,<br><br>   Plaintiff,<br><br>v.<br><br>NHK SEATING OF AMERICA INC.,<br>NHK SPRING COMPANY, LTD and<br>NHK INTERNATIONAL INC.,<br><br>   Defendants. | Case No. 2:13-cv-12937<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER
GRANTING IN PART DEFENDANTS' MOTION TO COMPEL [158]**

Lear Corporation holds several patents directed toward an active headrest restraint system in vehicles. Basically, these inventions use the force that the occupant's back places against the seatback during a car crash to move the headrest toward the occupant's head, thus reducing the whiplash the occupant experiences during the crash. Lear believes that three related companies, NHK Seating of America, NHK Spring Company, and NHK International (collectively "NHK"), are involved in making an active headrest restraint system that infringes its patents. So, in 2013, Lear sued NHK.

The parties' current dispute arises out of NHK's inequitable conduct defense and NHK's desire to discover facts supporting that defense. NHK believes that Lear did not disclose material information to the patent office during reexamination of one of the patents it is accused of infringing. NHK wants to know why the information was not disclosed. So it asks the Court to compel the deposition of the attorneys that handled the reexamination on

Lear's behalf. The rub is that one of those attorneys is one of Lear's attorneys in this case. NHK also believes that Lear did not disclose material information to the patent office in prosecuting three other patents that Lear has asserted in this lawsuit. So NHK also seeks to depose the attorneys that prosecuted those patents. Having considered the parties' briefs, the Court will grant in part NHK's motion to compel attorney depositions.

A brief explanation of inequitable conduct provides a backdrop for NHK's motion. "To prevail on the defense of inequitable conduct, the accused infringer must prove that the [patent] applicant misrepresented or omitted material information with the specific intent to deceive the [patent office]." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011) (en banc). If, more likely than not, the information would have changed the patent examiner's decision to issue a patent or to permit a claim amendment, that information is "material." *See id.* at 1291–92 ("In making this patentability determination, the court should apply the preponderance of the evidence standard."). And "specific intent" means that when examining all the circumstances, the "single most reasonable inference" is that the patent applicant intended to deceive the patent examiner. *Id.* at 1290–91. The accused infringer must present clear and convincing evidence of materiality and intent. *Id.* at 1287. Although that is a tough task, completing it is a big win for the accused infringer: "the remedy for inequitable conduct is the 'atomic bomb' of patent law. Unlike validity defenses, which are claim specific, inequitable conduct regarding any single claim renders the entire patent unenforceable." *Id.* at 1288 (internal citations omitted).

With that background, NHK's motion to compel is more easily understood. As to three of the patents it is accused of infringing—U.S. Patent Nos. 6,631,949 (the '949 patent), 6,655,733 (the '733 patent), and 7,455,357 (the '357 patent)—NHK says that Lear did not

disclose a patent previously issued to James Schubring. In NHK's view, had Lear disclosed that prior art reference during prosecution, more likely than not, the patent examiner would have found the inventions claimed in the '949, '733, and '357 patents were not novel or were obvious. (Schubring's "invention relates to a dynamically responsive vehicle head restraint assembly." U.S. Patent No. 5,938,279.) And NHK says that it has proof that Lear knew about the Schubring reference when it was prosecuting those three patents (according to NHK, the Schubring patent was owned by Lear and prosecuted by the law firm that has done other work for Lear). (ECF No. 158, PageID.5581.) So NHK concludes, it should be allowed to depose the attorneys that prosecuted the '949, '733, and '357 to determine why the Schubring reference was not disclosed.

As a first step, depositions are disproportionate to NHK's needs in this case. *See* Fed. R. Civ. P. 26(b). NHK can instead serve interrogatories on Lear regarding the non-disclosure of the Schubring reference during the prosecution of the '949, '733, and '357 patents. Several reasons support this ruling. For one, NHK has made little argument about the '949, '733, and '357 patents and the Schubring reference—the focus of NHK's motion to compel is the need to depose the attorneys that handled the reexamination of the fourth patent that NHK believes is not enforceable. (*See generally* ECF No. 158.) Indeed, NHK spends much effort explaining why it should be able to depose Lear's attorneys in this case, but it is not even clear that Lear's current counsel prosecuted the '949, '733, and '357 patents. Second, while the Court acknowledges Lear's claim that it is not plausible that the Schubring reference was material or that it had any intent to deceive, it appears that Lear has little objection to answering interrogatories. Indeed, Lear argues that one reason that NHK should not be able to depose the attorneys that prosecuted the '949, '733, and '357 patents is because NHK could obtain the

3

information another way: through interrogatories. (ECF No. 160, PageID.5671.) Third, this discovery option is well suited to provide the requested information. So, as a first step, the Court will permit NHK to serve interrogatories directed to the non-disclosure of the Schubring reference during the prosecution of the '949, '733, and '357 patents. Those interrogatory responses may well be enough for NHK. And if NHK believes they are insufficient, it may set up a conference with the Court to explain the insufficiencies.

That leaves U.S. Patent No. 5,378,043 (the '043 patent). Some backstory is again helpful to understand NHK's claim that the '043 patent is unenforceable because of Lear's inequitable conduct.

The '043 patent was issued in January 1995. When it issued, Claim 2 of the patent stated in part:

> A vehicle seat and headrest arrangement comprising:
> a seat bun frame having fore and aft ends;
> a seatback frame joined to the bun frame means adjacent the aft end of the bun frame; and
> a headrest pivotally attached with the seatback frame . . . wherein *the headrest has a cushion portion and an impact target* operatively associated with the cushion portion and pivotally associated with the seatback frame . . . .

U.S. Patent No. 5,378,043 col. 3 ll. 43–47 (Jan. 3, 1995) (emphasis added). The relevance of the emphasized language, and in particular, the "headrest has . . . an impact target," will become apparent in a moment.

Skip ahead 11 years. In 2006, Lear accused NHK of infringing the '043 patent. In response to Lear's accusation, NHK wrote a letter to Lear explaining why, in its view, the active headrest restraint system it was developing did not infringe. NHK's system had a lower unit, which converted the passenger's movement to power, and an upper unit, which moved

the head restraint. (ECF No. 158, PageID.5632) One line of NHK's response to Lear stated, "Upper and Lower units are installed to [the] seat back frame *separately*." (*Id.* (emphasis added).)

Skip ahead two more years. In August 2008, the patent office agreed to reexamine its decision to issue the '043 patent (the request may have been related to Lear's then-pending lawsuit against TS Tech). *See* Public Patent Application Information Retrieval, Control No. 90/009,250. For present purposes it suffices to know that "claims amended and issued during reexamination cannot be broader than the original claims," *John Bean Techs. Corp. v. Morris & Assocs., Inc.*, 887 F.3d 1322, 1327 (Fed. Cir. 2018). The reexamination of the '043 patent continued for years, finally concluding in 2013.

During the reexamination proceedings, Lear sought to amend Claim 2. Unlike the version of Claim 2 when the '043 patent issued, Lear's proposed amendment expressly separated the "impact target" from the headrest by adding (1) "; and" and (2) a new paragraph:

| Claim 2 of the '043 Patent in 1995 | Lear's Proposed Amendment During Reexamination of the '043 Patent |
|---|---|
| A vehicle seat and headrest arrangement comprising . . . | A vehicle seat and headrest arrangement comprising . . . |
| a headrest pivotally attached with the seatback frame . . . wherein the headrest has a cushion portion and an impact target operatively associated with the cushion portion and pivotally associated with the seatback frame . . . .<br><br>U.S. Patent No. 5,378,043 col. 3 ll. 43–47. | a headrest pivotally attached with the seatback frame . . . wherein the headrest has a cushion portion*; and*<br><br>an impact target operatively associated with the cushion portion and pivotally associated with the seatback frame . . . .<br><br>(ECF No. 161, PageID.5787 (emphasis added).) |

Ultimately the patent examiner permitted an amendment to Claim 2 where the headrest and impact target are expressly separated by a semicolon and a new paragraph. *See* Ex Parte Reexamination Certificate, U.S. Patent No. 5,378,043 col. 1 ll. 38–39 (Dec. 11, 2012).

With that background, here is NHK's claim of inequitable conduct. NHK argues that when it responded to Lear's claim of infringement by stating that its upper and lower units were installed "separately," it "explicitly explain[ed]" to Lear that its headrest and impact target were two separate parts. (*See* ECF No. 158, PageID.5579.) In NHK's view, Claim 2 originally claimed an invention where the headrest and impact target were one part: "*the headrest has* a cushion portion and *an impact target*." NHK says that only after it explained in its letter that its headrest and impact target were two parts, did Lear amend Claim 2 during patent reexamination to add "; and" and the new paragraph. In other words, NHK thinks Lear attempted to broaden Claim 2 during the reexam by separating the impact target from the headrest and thus cover NHK's product. And the kicker, says NHK, is that Lear never told the patent examiner that the reason it was trying to amend Claim 2 was that it was attempting to cover NHK's product. Instead, Lear merely told the examiner, "Claim 2 has been amended for clarification by adding punctuation and removing a redundant conjunction (first recitation of 'and' succeeding a semi-colon)." (ECF No. 161, PageID.5781.) So, says NHK, Lear intentionally withheld material information—the reason for the amendment of Claim 2—from the examiner. And that's inequitable conduct in NHK's view. NHK thus seeks to depose the attorneys that shepherded the '043 patent through the reexamination process to back up its theory.

Lear argues that because NHK's inequitable-conduct theory is not even plausible, NHK has no basis for discovering facts to support it (or, at least, not discovering them from the

6

attorneys that handled the reexamination of the '043 patent). Lear believes that NHK's theory plainly fails on both materiality and intent. Lear argues that any statements that it made to the examiner in support of its amendment of Claim 2 were not material because the examiner had before him the text of the original and amended versions; the examiner could thus determine for himself whether Lear's proposal broadened the claim. (ECF No. 160, PageID.5662.) And Lear points out that "the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence." (ECF No. 160, PageID.5663 (quoting *Therasense*, 649 F.3d at 1290).) Lear points out that the examiner permitted its amendment to Claim 2 and so he must have found that the amendment did not broaden the claim (recall that claims cannot be broadened during reexamination). This necessarily implies that "another reasonable inference is possible, namely, that Lear believed the amendment did not enlarge the claim scope." (ECF No. 160, PageID.5663.)

But Lear overlooks an important aspect of NHK's argument. To be sure, NHK complains that Lear broadened Claim 2 during reexamination. But that is not NHK's only gripe about Claim 2. NHK also asserts that it was inequitable for Lear not to disclose to the examiner that Lear had accused NHK of infringing the '430 patent and that in response, NHK told Lear that its headrest and impact target were separate. (ECF No. 158, PageID.5579; ECF No. 161, PageID.5759.) In other words, NHK thinks that had the examiner known of its response to Lear's assertion of infringement, that the examiner would have viewed Lear's addition of "; and" as less than innocent. (ECF No. 158, PageID.5579.) In NHK's view, the examiner would have scrutinized Lear's proposal more closely knowing that the motivation might be to cover NHK's product, and, in the end, would have found the change to have been impermissibly broadening. Lear's argument that the examiner could compare the text of the original claim

7

and the proposed amendment does not address NHK's claim that the examiner's view of the amendment would have been affected by the reason for the amendment.

That said, the Court does have doubts about NHK's theory. NHK responded to Lear's claim of infringement in 2006. Reexamination proceedings did not start until two years later, in 2008. *See* Public Patent Application Information Retrieval, Control No. 90/009,250. Lear's "and ;" amendment to Claim 2 came still two more years later, in 2010. *See id.* Jan. 15, 2010 Office Action Response. Moreover, during the early part of the reexamination, Lear proposed claim amendments but did not propose adding "and ;" and a new paragraph to Claim 2. *See id.* May 6, 2009 Office Action Response. It was only after the examiner rejected Claim 2 in light of a prior art reference, *see id.* Jan. 15, 2010 Office Action at 5, and stated that "the target is part of the headrest," *id.*, that Lear proposed expressly separating the headrest from the target, *see* May 6, 2009 Office Action Response. So on this limited record, it seems unlikely that what motivated Lear to amend Claim 2 was NHK's response to an infringement accusation four years earlier.

But the record is limited and now at issue is discovery, not merits. And whatever doubts the Court has about the inequitable conduct theory, it is not so implausible that NHK should not have a chance to collect underlying facts.

So the question shifts from whether NHK should be allowed to discover facts about why Claim 2 of the '043 patent was amended to how NHK should discover those facts. The means NHK proposes is the deposition of Michael Turner and Frank Angileri, attorneys that represented Lear during the reexamination of the '043 patent.

The Court does not believe that NHK should depose Angileri as a first step. Angileri is representing Lear in this very litigation. And NHK concedes that because Angileri is counsel

8

in this case, it must satisfy the three elements of *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), to depose him. (ECF No. 158, PageID.5583.) Namely, NHK must show "(1) no other means exist to obtain the information; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002) (ellipses omitted) (quoting *Shelton*, 805 F.2d at 1327). Yet, NHK has not shown that deposing Turner, the other attorney, is not another means to obtain the information that Angileri has. Turner signed the office action responses during the reexamination (including the one where the amendment was proposed) and so he may have been Lear's primary attorney on the '043 reexamination. And while Angileri and Turner both met with the examiner about the amendment, NHK has not explained why they think Turner's recall of that meeting will be any less than Angileri's. Perhaps after deposing Turner, NHK can show why it needs to depose Angileri too. But at this point, the Court is not convinced that it is necessary.

Permitting NHK to depose Turner as a first step would be the end of the matter except for the fact that Lear thinks *Shelton* shields Turner too—even though Turner is not its counsel in this case.

The Court is not persuaded. Lear cites *Jaguar Land Rover Ltd. v. Bombardier Recreational Prod., Inc.*, No. 16-CV-13386, 2018 WL 2276640 (E.D. Mich. May 18, 2018), in support of its claim that *Shelton* shields non-litigation counsel. True, *Jaguar* says, "[t]he *Shelton* opinion itself suggests that the applicability of the rule extends beyond trial counsel. The *Shelton* court considered the application of the *Shelton* rule to a company's supervising in-house counsel, and not trial counsel." *Id.* at *1. But in both *Shelton* and in *Jaguar*, in-house counsel contributed significantly to the litigation strategy. *See Shelton*, 805 F.2d at 1328

9

(noting that in-house counsel "identified, selected, and compiled documents that are significant to her client's defenses in this case" and that "the selection and compilation of documents is often more crucial than legal research"); *Jaguar*, 2018 WL 2276640, at *1 (finding that in-house counsel was "properly categorized as litigation counsel because she oversees all litigation for Plaintiff"). Here, it does not appear that Turner is involved in litigating this case in any way.

Moreover, NHK's deposition of Turner gives rise to none of the concerns that animate the *Shelton* rule. In *Shelton*, the Eighth Circuit explained that courts should be reluctant to allow an attorney to depose her counterpart in the case because permitting the deposition would be a short cut to her counterpart's strategy, would be disruptive to the litigation, would pull opposing counsel's attention away from the litigation, and would discourage the client from speaking frankly to her counsel about the case (for fear that her counsel would be deposed). *Shelton*, 805 F.2d at 1327. Because Turner does not represent Lear in this case, deposing him does not present these concerns.

Moreover, the Eighth Circuit subsequently narrowed *Shelton*. It explained, "The *Shelton* test was intend[ed] to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy. . . . *Shelton* was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial." *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 730 (8th Cir. 2002); *see also aaiPharma, Inc. v. Kremers Urban Dev. Co.*, 361 F. Supp. 2d 770, 775 (N.D. Ill. 2005) (finding *Pamida* "compelling" where "Defendants seek discovery [from Plaintiff's law firm] about [the

firm's] representation of [the Plaintiff] regarding the prosecution of the patents in suit, and not about the underlying litigation"). Here, NHK seeks to depose Turner about reexamination proceedings that long ago concluded; it does not seek to ask him anything about Lear's litigation strategy in this ongoing case.

* * *

In short, the Court will permit NHK to serve interrogatories directed to what Lear knew about the Schubring reference during the prosecution of '949, '733, and '357 patents. The Court will also permit NHK to depose Turner for no more than three hours about the amendment of Claim 2 of the '043 during patent reexamination.

One last note. The Court anticipates that during the deposition of Turner or in answering interrogatories, Lear will, at points, object based on privilege or work product. The Court hopes that these will be used judiciously. Indeed, NHK has stated that it "will seek only non-privileged discoverable information during the depositions." (ECF No. 161, PageID.5762.)

SO ORDERED.

Dated: September 30, 2020

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE