UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEAR CORPORATION,

    Plaintiff,

v.

NHK SEATING OF AMERICA INC.,
NHK SPRING COMPANY, LIMITED,
and
NHK INTERNATIONAL INC.,

    Defendants.

Case No. 13-12937
Honorable Laurie J. Michelson

**OPINION AND ORDER
GRANTING DEFENDANTS' MOTION FOR LEAVE TO SERVE SECOND
AMENDED UNENFORCEABILITY CONTENTIONS [223]**

In patent cases, this Court enters a case-management order with patent-specific requirements. (*See* ECF No. 43.) One of those requirements is that parties exchange infringement, invalidity, and unenforceability contentions. (ECF No. 43, PageID.423–429.) At a basic level, these contentions are more detailed versions of a complaint or answer: a party provides the specifics of its claims and defenses to the opposing party. *See Lear Corp. v. NHK Seating of Am. Inc.*, No. 2:13-CV-12937, 2020 WL 1815876, at *1–2 (E.D. Mich. Apr. 10, 2020) (discussing the purpose of contentions).

Under this Court's case-management order, contentions become final about six months into the case (unless extensions are granted). *See id.* After that point, a party can amend its contentions "only by order of the Court upon a showing of good

cause and absence of unfair prejudice to opposing parties, made within 14 days upon discovery of the basis for the amendment." (ECF No. 43, PageID.428.)

Although the date for final contentions in this case has long come and gone (the case is nearly nine years old), NHK Japan, NHK America, and NHK International ("the NHK Companies") ask the Court for leave to amend their final unenforceability contentions. (ECF No. 223.) To appreciate their request, some backstory is helpful.

As they now stand, the NHK Companies' unenforceability contentions include the defense of equitable estoppel. Essentially, the NHK Companies contend that starting in 2006, Lear accused them (or, at least, NHK Japan) of selling active headrest restraints to Toyota that infringed Lear's patents. But after years of letter writing between NHK Japan and Lear, Lear fell silent in 2010. The NHK Companies (or, at least, NHK Japan) say that they reasonably interpreted this silence as them being in the clear, and so they continued to make the active headrest restraints for Toyota (or Toyota's seat supplier). Yet, in 2013, Lear sued NHK America and, a few years later, NHK Japan and NHK International, too. Thus, the NHK Companies contend, allowing Lear to recover for infringement now, after millions of active headrest restraints have been sold, would be prejudicial. *See generally Lear Corp. v. NHK Spring Co., LTD*, No. 18-10613, 2019 WL 934811, at *5 (E.D. Mich. Feb. 26, 2019) (explaining that equitable estoppel involves reliance resulting in prejudice).

According to the NHK Companies, they recently learned new information that supports the prejudice element of their equitable estoppel defense. In particular,

2

Lear's damages expert, Michael Chase, opined that if Lear and the NHK Companies had negotiated a patent license, the license fee would have been $2.50 for each active-headrest-restraint unit. (ECF No. 232-6, PageID.9900.) And when the NHK Companies deposed Chase, he testified, "So my inference is, my starting inference, is [the NHK Companies] would simply include [the license] cost as part of their cost structure and pass it along as to the seat supplier, and then eventually to Toyota. But if they somehow wanted to absorb that, that would be within their discretion as well." (ECF No. 243-2, PageID.11627.) The NHK Companies point out that $2.50 is five times the profit they made on each unit they sold to Toyota. (ECF No. 223, PageID.7292.) So according to the NHK Companies, the notion that they could have passed on this large of a license fee (or part of it) to Toyota is new (and "shocking") information. (ECF No. 223, PageID.7292.) The NHK Companies claim that had Lear made known back in say, 2007, that it was seeking a patent license fee of $2.50 per unit, the NHK Companies would have done things differently back then. Thus, they claim that Lear's recently disclosed damage theory lends additional support to the prejudice element of equitable estoppel. (ECF No. 223, PageID.7294.) So they seek to amend their unenforceability contentions accordingly. (*See* ECF No. 223-1, PageID.7335–7337.)

With that background, the Court can now turn to the key inquiries for deciding whether the NHK Companies should be allowed to amend: (1) Did the NHK Companies seek to amend within 14 days of discovering the basis for amendment? (2) Have the NHK Companies demonstrated good cause to amend their contentions

despite that the time for final contentions has long since passed? (3) Have the NHK Companies shown that Lear will not be unfairly prejudiced if they are permitted to amend? (*See* ECF No. 43, PageID.428 (providing standard for amending contentions after they become final).)

*Within 14 Days?* The NHK Companies deposed Chase on August 3, 2021 (ECF No. 243-2, PageID.11626) and filed their motion to amend their contentions on August 13, 2021 (ECF No. 223). That gap is less than 14 days.

But what of the fact that Chase's expert report is dated almost three months prior to his deposition? In his report, Chase stated that had Lear and the NHK Companies negotiated a license back in the 2007 timeframe, "NHK America would have rationally included such costs in building up to a price for the components it sold." (ECF No. 232-6, PageID.9886.) This statement in Chase's report is similar to the one the NHK Companies say they were surprised to hear at Chase's deposition. (ECF No. 223, PageID.7298–7299.)

Even so, the Court finds the 14-day requirement satisfied. It was reasonable for the NHK Companies to wait for Chase's deposition to get a more complete picture of his royalty theory. And, in any event, the point of the 14-day rule is to ensure that amendments are sought soon after new information is discovered. Given that this case is nearing nine years old and that the final contentions were exchanged years ago, three months or two weeks makes no real difference. Indeed, it was not as though fact discovery was open when Chase filed his expert report but then closed by the

4

time of his deposition. (*See* ECF No. 191, PageID.6860 (setting fact discovery deadline before expert discovery).)

*Good Cause?* The NHK Companies say, "For the first time, and after the close of fact discovery, Lear disclosed its shocking new theory that Defendants should pay a 'reasonable' license fee to Lear which amounts to nearly five times Defendants' profit because this fee could have been passed-on to its customer Toyota by raising the price of the accused [active headrest restraints;] Lear only disclosed this information in the report and deposition of its damages expert, Mr. Chase." (ECF No. 223, PageID.7292.) According to the NHK Companies, prior to Chase's report and deposition, "Lear provided no details as to its proposed license fee." (ECF No. 223, PageID.7300.) So, they claim, the new information is good cause for seeking amendment.

Lear attempts to rebut the NHK Companies' claim of new information in a few ways. For one, Lear points out that years before Chase's report, back in January 2018, it sent a letter to the NHK Companies stating that it was seeking a $2.50 license fee. (ECF No. 239, PageID.1130.) So, says Lear, the $2.50 amount is not new information. As for the idea that the $2.50 fee could have been passed on to Toyota, Lear explains that it really does not care how the NHK Companies would have paid that fee. (ECF No. 239, PageID.11301–11302 ("Lear is agnostic on how NHK pays.").) Further, in Lear's view, if the NHK Companies had to pay that license fee, logic dictates that there would have been only three things the NHK Companies could have done: absorb that cost themselves, pass that cost onto Toyota, or some combination of those two.

5

(ECF No. 239, PageID.11302–11303.) So, says Lear, Chase's pass-costs-onto-Toyota theory is not new information either. (*See id.* (asserting that a company's ability to pass on costs is an "obvious" fact).)

The Court is not persuaded by Lear's attempt to render new information old. For one, as the NHK Companies point out (ECF No. 243, PageID.11616–11617), Lear's disclosure of the $2.50 license fee was part of settlement negotiations, and thus, the NHK Companies could have reasonably thought that the number was not evidence in this case. *See* Fed. R. Evid. 408. In fact, Lear's 2018 letter stated that the information was pursuant to Rule 408 and "not admissible for any other purpose." (ECF No. 239-2, PageID.11309.) And even if the $2.50 figure from Lear's 2018 correspondence is admissible evidence, the NHK Companies could have reasonably believed it was not a concrete damages assessment. Lear's 2018 letter stated, "any estimates of damages provided herein are subject to further investigation, discovery, and expert analysis." (*See id.*) So, arguably at least, it was not until Lear served Chase's report that it firmed up both the amount of damages and the theories justifying that amount. Indeed, passing along $2.50 per unit to Toyota would have represented a 20% price increase, so the NHK Companies had some reason to think that Chase would not have come up with that number or asserted that it could have been passed onto Toyota. (*See* ECF No. 232-6, PageID.9880, 9886.)

In all, the Court finds that the NHK Companies have established good cause to amend.

*Unfair Prejudice to Lear?* The NHK Companies' proposed amended contentions have new assertions, and Lear argues that these new assertions require additional discovery. Given that discovery is closed, Lear claims prejudice from these new assertions. So a review of some of the NHK Companies' new assertions is in order.

For one, the NHK Companies' proposed amended contentions assert that they were merely a Tier-2 supplier to Toyota and thus, unlike a Tier-1 supplier, are less able to pay a $2.50 license fee. (*See* ECF No. 223-1, PageID.7335–7336.) In particular, the NHK Companies explain that while Lear has licensed their active-headrest-restraint patents for $2.50 per unit, that was to a Tier-1 supplier selling an entire seat for hundreds of dollars; the NHK Companies say they merely sold a seat component that cost $12. (*See* ECF No. 243, PageID.11618.) Lear says that had the NHK Companies made this contention when discovery was still open, it would have sought information on whether, in other situations, the NHK Companies (or other Tier 2 suppliers) have been able to recoup their costs, including costs associated with a license fee, from either the Tier 1 supplier or Toyota itself. (*See* ECF No. 239, PageID.1104.)

The NHK Companies' proposed amended contentions also state that because Lear neither sued Toyota for the license fee back in, say, 2007 nor approached them about the license fee back in 2007, they reasonably concluded that Lear was not seeking such a high license fee. (*See* ECF No. 223-1, PageID.7337.) Their point, apparently, is that if they had known back in 2007 that Lear was seeking a $2.50 license fee, they could have done things differently like, perhaps, designing their

7

headrests differently or approaching Toyota about covering the license fee. (*See id.*) Lear says that because discovery is now closed, they cannot collect evidence as to whether the NHK Companies actually relied on the fact that Lear did not offer a license in, say, 2007 and cannot collect evidence on what actions the NHK Companies would have actually taken had Lear offered a license back in 2007. (*See* ECF No. 239, PageID.11305.)

Finally, in their proposed amended contentions, the NHK Companies say that they would be prejudiced if they were forced to pay Chase's estimated $59,000,000 in damages (which is based on license fee of $2.50 per unit) when Lear never mentioned a $2.50 fee back in, say, 2007. (ECF No. 223-1, PageID.7337.) Lear says that this is yet another contention that it cannot now explore in discovery. (ECF No. 239, PageID.11306.)

In this scenario, the Court will not presume prejudice. True, in deciding that the NHK Companies should not now be able to amend their answers with an intervening-rights defense, the Court found that Lear did not have to make a strong showing of prejudice. But nothing prevented the NHK Companies from pleading intervening rights much earlier; here though, the NHK Companies' proposed amendments are based on new information. Not only that, the new information is from Lear (via Chase). Second, the NHK Companies do not seek to amend their contentions to add a new defense (like intervening rights): their contentions already include the defense of equitable estoppel. The NHK Companies merely seek to bolster

8

that existing defense with more facts and argument. So in this scenario, the Court looks for actual, not presumed, prejudice.

As for actual prejudice, the Court does appreciate that if the NHK Companies had served the contentions they now propose during the discovery period, Lear could have gathered information on whether the NHK Companies truly relied on Lear's failure to ask for a $2.50 license fee in, say, 2007, the actions the NHK Companies would have actually taken had they been requested to pay that fee back then, and whether the NHK Companies have passed on license fee costs in other situations. But the NHK Companies had little reason to include their new assertions before the discovery cutoff because, at that time, they were not yet aware that Chase would opine that a reasonable royalty was $2.50 or that the license fee could have been passed on to Toyota. So while the NHK Companies' new assertions might result in some prejudice to Lear, that prejudice is not necessarily "unfair." (*See* ECF No. 43, PageID.428 (providing that a party can amend its final contentions only if there is no "unfair prejudice to opposing parties")).

In any event, the Court does not perceive that Lear will suffer any significant prejudice. As noted, the NHK Companies have long disclosed their equitable estoppel defense. Indeed, back in July 2018, they moved for summary judgment on that defense. Lear was aware that economic prejudice was an element of that defense and did conduct (or could have conducted) discovery on that element. Further, Lear presumably also had some general sense of its damages expert's position during the fact discovery period. Thus, Lear could have attempted to gather evidence on whether

9

the NHK Companies relied on the fact that they were not asked to take a license in 2007 (or what the NHK Companies would have done had they been asked). Additionally, Lear will have ample opportunity to cross examine the NHK Companies' witnesses on the new assertions at trial. In fact, the Court will require the NHK Companies to identify for Lear all witnesses and documents they intend to use to support their new assertions within four weeks of entry of this order. And finally, if Lear does not want to rely on a $2.50 reasonable royalty, its damages expert can eliminate that royalty opinion.

* * *

In short, the Court GRANTS the NHK Companies' motion for leave to serve second amended invalidity and unenforceability contentions regarding their equitable estoppel defense (ECF No. 223). Those contentions are not to include any language beyond the redlines in the proposed amended contentions attached to the motion. (*See e.g.*, ECF No. 223-1, PageID.7335–7337.) Further, by April 19, 2022, the NHK Companies are to identify for Lear all witnesses and documents they intend to rely on to support the new assertions in their equitable estoppel contention. For witnesses, the NHK Companies are to provide a brief description of the witnesses' testimony insofar as the testimony relates to the new assertions.

SO ORDERED.

Dated: March 23, 2022

                                               s/Laurie J. Michelson
                                               LAURIE J. MICHELSON
                                               UNITED STATES DISTRICT JUDGE