UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LEAR CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>NHK SEATING OF AMERICA INC.,<br>NHK SPRING COMPANY, LIMITED,<br>and<br>NHK INTERNATIONAL INC.,<br><br>    Defendants. | Case No. 13-12937<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER DENYING THE DEFENDANTS' MOTION FOR SANCTIONS BASED ON LEAR'S SPOLIATION OF EVIDENCE [280]**

Lear Corporation has sued NHK Seating of America, NHK Spring Company, and NHK International (the NHK Companies) for patent infringement. One of the NHK Companies' affirmative defenses is the "on-sale bar": they say that one of Lear's patents is invalid because more than a year before Lear filed the patent application, it offered the patented product for sale. In a prior opinion, the Court granted Lear summary judgment on this affirmative defense, finding that there was not clear and convincing evidence of an invalidating offer for sale.

The NHK Companies now seek spoliation sanctions. They believe that they lacked clear and convincing evidence of a patent-invalidating offer because Lear spoliated that evidence. As a sanction for Lear's spoliation, the NHK Companies ask the Court to give the jury two instructions that would be adverse to Lear. For the reasons that follow, the Court will deny the NHK Companies' request.

I.

In 2004, Lear invented the Protec Plus, an active headrest restraint for vehicle seats. (*See* ECF No. 280-13, PageID.17537–17538.) On October 4, 2006, Lear filed an application to patent the Protec Plus. *See* U.S. Patent No. 7,455,357, at (22) (filed Oct. 4, 2006). That application was later granted, resulting in U.S. Patent No. 7,455,357 ('357 patent). In this suit, Lear claims that the NHK Companies have infringed the '357 patent (among others).

In response to this claim of infringement, the NHK Companies raised the "on-sale bar." Under the law, if an invention "was . . . on sale in this country, more than one year prior to the date of the application for patent in the United States," then the invention is not entitled to patent protection. *See* 35 U.S.C. § 102(b) (pre-AIA). Here, Lear filed a patent application for its Protec Plus product on October 4, 2006. So if Lear offered the Protec Plus for sale before October 4, 2005, then the '357 patent would be invalid and the NHK Companies could not have infringed it. According to the NHK Companies, Lear offered the Protec Plus to Toyota in 2004, and Lear offered the Protec Plus to Tachi-S or Honda in 2005 (before October 4). So, say the NHK Companies, the on-sale bar renders the '357 patent invalid.

The Court previously granted Lear summary judgment on the NHK Companies' on-sale-bar defense. *Lear Corp. v. NHK Seating of Am. Inc.*, No. 13-12937, 2022 WL 876021, at *3–8 (E.D. Mich. Mar. 23, 2022). Regarding the alleged offer of the Protec Plus to Toyota, the NHK Companies relied in significant part on a "Quotation Status" document indicating that Lear had quoted a "Russia Seats"

2

program to Toyota in 2004. But in this Court's opinion, "there [was] no document or witness that describes the 'Russia Seats' program, let alone that it involved the Protec Plus." *Id.* at *7. As for Tachi-S and Honda, this Court understood the NHK Companies to be arguing that the allegedly invalidating offer was a quote Lear provided to Tachi-S in July 2005. *Id.* at *5. But in this Court's view, that July 2005 quote was most likely a quote for Lear's engineering and proprietary information that would allow Tachi-S to manufacture the Protec Plus in Japan; in other words, the quote was most likely not for a Protec Plus device. *See id.* at *7. Noting that the NHK Companies would have to establish the on-sale bar by "clear and convincing" evidence at trial, the Court found that no reasonable jury could be clearly convinced that Lear had offered the Protec Plus before the critical date of October 4, 2005. *Id.* at *8.

The NHK Companies now argue that the reason that they did not have clear and convincing evidence of Lear offering a Protec Plus device before the critical date is because Lear destroyed that evidence. The NHK Companies believe that there were quotes, offers, emails, and other documents showing, for instance, that the Russia Seats program quoted to Toyota was for the Protec Plus or that Lear and Tachi-S made a joint offer to Honda for actual Protec Plus devices. But, in their view, Lear destroyed this on-sale-bar evidence.

As a sanction for Lear's alleged spoliation, the NHK Companies ask for a pair of jury instructions that would be adverse to Lear. In particular, they ask the Court to instruct the jury that (1) "the September 2004 Quote to Toyota [for the Russia

3

Seats Program] was for seats that would include ProTec PLuS AHRs" and (2) "the offer that Honda accepted on November 2, 2005, as reflected in [an email from Morihiro Fujiu], was sent to Honda before October 4, 2005." (ECF No. 280, PageID.17385.)

## II.

The legal standard governing the relief that the NHK Companies seek is again important and depends on whether the allegedly spoliated evidence was electronically stored information.

Most everything suggests that ESI is at issue. For instance, the NHK Companies assert that Lear has produced some internal emails between Lear employees about the Tachi-S transaction, but Lear has not produced a single email between Lear and Tachi-S. Emails are, of course, electronically stored information. Moreover, at least with respect to the alleged invalidating offer to Tachi-S or Honda, Lear employees in the United States were communicating with Lear employees in Japan. So, logically, quotes, offers, and related documents would have been created and stored in electronic format. As for the alleged Toyota offer, the NHK Companies point to Gerry Locke's PowerPoint presentation about the Protec Plus, a "quoted programs" spreadsheet, and a "sales scenario" chart. (*See* ECF No. 280, PageID.17403.) But examining these documents suggests that they were created and stored electronically. (*See* ECF Nos. 280-15, 280-18, 280-19.) Thus, it is reasonable to infer that other documents related to this alleged offer were created and stored electronically as well. Moreover, this was 2004 and 2005—well into the

4

computer and internet age. And the companies that Lear was working with (Toyota, Tachi-S, and Honda) were large, tech-savvy companies. All of this suggests that the documents that the NHK Companies believe were destroyed were created and stored electronically.

Indeed, the NHK Companies do not really argue otherwise. In their opening brief, they rely on Federal Rule of Civil Procedure 37(e). (ECF No. 280, PageID.17396.) And Rule 37(e) only applies to electronically stored information. It is only at the very end of their *reply* brief—in a single sentence—the NHK Companies state, "Defendants never limited their document request or this motion to [ESI]; certainly offer documents, RFQs, and other records Lear had in 2004-5 would have been in paper form at some point." (ECF No. 287, PageID.18016.) This is entirely conclusory; the NHK Companies merely speculate that the documents in support of its on-sale-bar defense must have been reduced to paper at some point.

The upshot of all this is that Rule 37(e) governs the NHK Companies' request for adverse-inference instructions. And under Rule 37(e), the Court "may . . . instruct the jury that it may or must presume the information was unfavorable to the party"—but "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). And just to be sure, the advisory committee note to the 2015 amendment to Rule 37 states, "Subdivision (e)(2) requires a finding that the party acted with the intent to deprive another party of the information's use in the litigation." The advisory committee note further explains that the amended Rule 37(e)(2) "rejects cases such

5

as *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir. 2002), that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence."

### III.

With the legal standard in place, the Court turns to applying it to the facts of this case. Although made for various reasons, the NHK Companies make several arguments suggesting that Lear acted with the intent to deprive them of on-sale-bar evidence.

### A.

For one, the NHK Companies point out that Lear has produced emails between Lear employees about the transaction with Tachi-S or Honda, but Lear has not produced a single email between Lear and Tachi-S or a single email between Lear and Honda. (ECF No. 280, PageID.17408; ECF No. 307, PageID.18860.) The NHK Companies thus imply that Lear intentionally destroyed emails between itself and Tachi-S and Honda because they contained evidence of an offer of the Protec Plus before the critical date.

While it is possible to infer destruction from the existence of some emails but not others, the inference of intentional destruction to deprive NHK of using them in this litigation is weak. If Lear truly wanted to cover up an invalidating sale, why would it have kept emails between Lear employees that discuss the transaction with Tachi-S and Honda and that suggest that there are still more relevant emails? (*See e.g.*, ECF No. 306-4, PageID.18853–18858.) Indeed, part of the record in this

6

case is an email from Morihiro Fujiu, a Lear employee, reporting that Honda had agreed to use Tachi-S's seats featuring Lear's Protec Plus. (ECF No. 280-21, PageID.17724.) It is this "great news" email that the NHK Companies say reflects Honda's acceptance of an offer that invalidates the '357 patent. (ECF No. 280, PageID.17407.) But if Lear intentionally destroyed evidence relating to the on-sale bar, why would it have let Fujiu's email (among many others discussing the Tachi-S transaction) hang around?

Also cutting against the inference that Lear intentionally destroyed emails between itself and Tachi-S or Honda is simply the age of the files. The emails and other files that the NHK Companies assert that Lear destroyed were created in 2005. This suit was not filed until eight years later. And even if Lear had a pre-suit duty to preserve because it accused NHK International or NHK Spring of infringement before filing suit, Lear did not assert infringement of the '357 patent until September 2009. (ECF No. 26-6, PageID.538.) That is still four years after the allegedly spoliated evidence was created. A lot of inadvertent things could have happened to these files in four years.

In all, the fact that there are emails among Lear employees discussing the 2005 Tachi-S transaction but no like emails between Lear and Tachi-S or Lear and Honda does not show that Lear acted with the intent to deprive the NHK Companies of on-sale-bar evidence.

7

B.

The NHK Companies also suggest that Lear's breach of its obligation to retain files is evidence that Lear intentionally destroyed on-sale-bar evidence. According to the NHK Companies, Lear's duty to preserve files relating to the Protec Plus arose from several different sources. Two are worth discussing in detail: Lear's document-retention policy and Lear's litigation with TS Tech.

1.

Start with Lear's document-retention policy. In 2006, Lear's retention policy required Lear to keep "sales agreements," "RFQs," "quotes," "sales orders," and other files for the "Life of Product + 72" months. (ECF No. 280-5, PageID.17450, 17452.) The NHK Companies read the policy's use of the word "Product" to include the 2008 Honda Acura and Accord, which are vehicles that featured Tachi-S seats that, in turn, featured the Protec Plus. (ECF No. 287, PageID.18015.) Thus, the NHK Companies argue that Lear's document-retention policy obligated Lear to keep evidence of offers of the Protec Plus.

Even assuming that Lear breached its document-retention policy, it does not necessarily follow that Lear did so because it intended to deprive the NHK Companies of on-sale-bar evidence. Despite the retention policy, the offer documents may have been lost due to inadvertence or negligence over the years, neither of which justify an adverse-inference instruction under Rule 37(e)(2). Indeed, some courts have held that while the breach of a document-retention policy gives rise to a presumption that the unretained documents were unfavorable to the breaching

8

party, an additional showing of bad faith is required for an adverse instruction. *See Martinez v. City of Chicago*, No. 14-CV-369, 2016 WL 3538823, at *23 (N.D. Ill. June 29, 2016) ("[A] violation of a records retention policy creates a rebuttable presumption that the missing evidence was unfavorable to the responsible party, but this does not eliminate the need to show bad faith in order to warrant the adverse inference instruction." (citing *Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002)); *Richardson v. City of Chicago*, No. 08 C 4824, 2012 WL 3643908, at *6 (N.D. Ill. Aug. 22, 2012) ("[T]his Circuit has consistently held that absent bad faith, a violation of a record retention regulation, would not automatically trigger an adverse inference.").

In short, even if Lear breached its document retention policy, the Court is not persuaded that the breach warrants the adverse instructions that the NHK Companies request.

**2.**

The NHK Companies also say that Lear had a duty to preserve evidence that the Protec Plus was offered for sale before the critical date because Lear accused TS Tech of patent infringement.

Here is the relevant background. In an April 2005 email from Michael Maddelein, then the vice president of seating systems for Lear, Maddelein stated, "If we can get Honda business through Tachi-S, we will have our patented design in [a] Honda product, and will be positioned well when discussions regarding TS Tech's design infringement occur." (ECF No. 280-9, PageID.17465.) The NHK

9

Companies say that Maddelein was referring to placing the Protec Plus into Honda vehicles and that Lear would be "positioned well" when TS Tech infringed the Protec Plus design. The NHK Companies say that because Lear was contemplating suing TS Tech over the Protec Plus design in April 2005, "Lear was obligated to preserve documents relating to the ProTec PLuS at least as early as April 2005." (*Id.*) In December 2005, Lear accused TS Tech of patent infringement and the parties engaged in negotiations for almost two years. (*See* ECF No. 280-33, PageID.17860.) In September 2007, Lear finally sued TS Tech for patent infringement. *See* Complaint, *Lear Corp. v. TS Tech USA Corp.*, No. 09-cv-00993 (filed Sept. 14, 2007).

Even assuming that by April 2005, litigation with TS Tech was "reasonably foreseeable" such that Lear had a duty-to-preserve, *see Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011), the NHK Companies have not persuaded the Court that the scope of Lear's duty-to-preserve included offers for the Protec Plus (or documents related to those offers). The patent that covers the Protec Plus is the '357 patent. And despite Maddelein's email about the Protec Plus helping Lear's infringement position against TS Tech, and despite a 2007 presentation perhaps indicating that Lear's infringement position against TS Tech would be stronger once the '357 patent issued (ECF No. 280-33, PageID.17859), the bottom line is that Lear never asserted the '357 patent against TS Tech. *See* Complaint, *Lear Corp. v. TS Tech USA Corp.*, No. 09-cv-00993 (filed Sept. 14, 2007) (asserting U.S. Patent No. 5,378,043); Complaint, *Lear Corp. v. TS Tech USA Corp.*,

No. 11-cv-00245 (filed Oct. 26, 2010) (asserting U.S. Patent Nos. 6,955,397, 7,644,987). Because Lear never asserted the patent covering the Protec Plus against TS Tech, its preservation duties associated with that litigation would not have extended to Protec Plus offers.

The NHK Companies disagree. They say that the duty-to-preserve from the TS Tech litigation encompassed Protec Plus documents because "Lear was contemplating suing TS Tech relating to design aspects of its ProTec PLuS that were covered by other existing Lear patents." (ECF No. 287, PageID.18014.) The NHK Companies also cite cases stating that a patent holder's products are relevant to, for example, damages or obviousness. (ECF No. 287, PageID.18014 n.3; ECF No. 280, PageID.17399.) Their point, apparently, is that although Lear did not claim that TS Tech infringed the '357 patent, documents about the Protec Plus would have been relevant to damages, obviousness, and other issues that came up during Lear's pre-suit negotiations with TS Tech and the subsequent litigation.

In this Court's opinion, the NHK Companies paint with too broad a brush. The documents at issue now are not just any documents related to the Protec Plus, but documents that show that the Protec Plus was offered for sale before the critical date. The NHK Companies have not adequately explained how this much narrower set of Protec Plus documents would have been relevant to Lear's claims against TS Tech or TS Tech's defenses to Lear's claims.

In short, the Court finds that Lear's preservation obligations arising out of its pre-suit accusations against TS Tech and from the subsequent suit did not

11

encompass evidence that it offered to sell the Protec Plus before October 4, 2005. Thus, Lear's preservation obligations arising out of the TS Tech litigation do not help the NHK Companies show that Lear acted with the intent to deprive the NHK Companies of on-sale-bar evidence.

## C.

The NHK Companies also argue that Lear intentionally "destroyed emails from at least one highly relevant witness" while this very litigation was pending. (ECF No. 287, PageID.18016.)

Here is the background related to this assertion. Emails from 2005 show that among others, Morihiro Fujiu, Eiichi Ono, Tomohiro Matsuoka, and Takashi Hosoe were involved in securing a deal to place the Protec Plus in Tachi-S's seats (which, in turn, were placed in Honda vehicles). (*See e.g.*, ECF Nos. 280-20, 280-21.) The NHK Companies state that at the outset of this case, they served discovery requests that would have covered these four Lear employees' emails. Then, many years later, in September 2020, the NHK Companies served more specific discovery requests asking Lear to produce certain emails from these individuals' accounts. (*See* ECF No. 280-22, PageID.17727; ECF No. 306-2, PageID.18844.) Lear informed the NHK Companies that "searches in Japan have turned up no additional documents." (ECF No. 280-22, PageID.17726.) The NHK Companies then served interrogatories on Lear to find out when Fujiu, Ono, Matsuoka, and Hosoe left Lear. (*See* ECF No. 280-25.) Fujiu, Ono, and Matsuoka had left Lear long ago—before this suit was filed. (ECF No. 280-25, PageID.17815.) But Hosoe only left Lear in February 2020—

12

years after this suit was filed. (ECF No. 280-25, PageID.17815.) So the NHK Companies argue that, at a minimum, Lear has intentionally destroyed Hosoe's emails.

Some facts favor the NHK Companies' position. For one, the litigation hold associated with this case was in effect long before Hosoe left Lear. And Lear has asserted the '357 patent in this case, so, unlike the TS Tech litigation, the duty to preserve would have encompassed offers for the Protec Plus. Further, Hosoe was copied on emails from 2005 relating to the Protec Plus agreement with Tachi-S. (*See e.g.*, ECF No. 280-21, PageID.17724; ECF No. 280-20, PageID.17721.)

Still the question is whether Lear intentionally destroyed Hosoe's emails to deprive the NHK Companies of on-sale-bar evidence. Given the record before the Court, the answer is "no." First, Lear states that in response to the NHK Companies' discovery request toward the outset of this case, it produced responsive emails. (ECF No. 306, PageID.18836.) This assertion is supported by the fact that the record contains quite a few emails to or from Hosoe from 2005 (not to mention other emails from 2005 relating to the Tachi-S transaction). (*See e.g.*, ECF No. 306-4, PageID.18853–18858.) Then, when the NHK Companies served more focused requests in September 2020, Lear stated that "searches in Japan have turned up no *additional* documents." (ECF No. 280-22, PageID.17726 (emphasis added).) This is quite plausible. To return to a theme, the relevant emails were created in 2005—four years before Lear accused NHK Spring of infringing the '357 patent, eight years before this suit, and 15 years before the specific request for Hosoe's emails.

13

Finally, given that Lear produced some emails from 2005 relating to the Tachi-S and Honda transaction, Lear either did a poor job of ridding itself of on-sale-bar evidence or never tried to do so. The latter is the more plausible inference.

In short, Lear's failure to preserve Hosoe's emails does not warrant the adverse instructions that the NHK Companies request.

### D.

The NHK Companies make a couple of other arguments that could be construed as arguments that Lear intentionally destroyed on-sale-bar evidence.

For one, the NHK Companies stress that for much of this nine-year litigation, Lear maintained that the Protec Plus was not viable (or "reduced to practice" in patent parlance) until shortly before it sought patent protection for it, i.e., shortly before it filed the application for the '357 patent. (ECF No. 280, PageID.17411 & n.7.) Under that timeline, there could be no on-sale bar: if the Protec Plus was not in saleable form until just before Lear sought patent application for it, then any offer of the Protec Plus would have been well within the permitted one-year window. And if there was no on-sale bar, then, of course, there would be no good reason for the NHK Companies to pursue on-sale bar evidence in discovery. But, say the NHK Companies, it turned out that the true timeline was different. According to them, in March 2021, Lear's 30(b)(6) witness finally admitted that the Protec Plus was fully developed by August 2004—more than two years before the '357 application was filed. (ECF No. 280, PageID.17411 n.7; ECF No. 182, PageID.6184–

14

6185.) Thus, the NHK Companies imply that Lear misled them into thinking that there was no on-sale bar and thus, no-on-sale bar evidence, when, in fact, there was.

While changing the dates of when the Protec Plus was fully developed might be construed as a bad-faith litigation tactic, the evolving date does not show that Lear intentionally destroyed on-sale-bar evidence. Given that most of the on-sale-bar evidence would have been created in 2004 or 2005, there is a very good chance that the evidence was long gone before this suit was filed in 2013. And, obviously, it was not until this suit was filed that Lear answered discovery requests about when the invention of the '357 patent was reduced to practice. In other words, by the time Lear made the alleged misrepresentations, the documents that the NHK Companies seek may have already been long gone.

The NHK Companies also point out that Lear was actively trying to license some of its patents in 2003. (ECF No. 280, PageID.17398.) But the NHK Companies cite no authority stating that litigation is "reasonably foreseeable," *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011), whenever a patent holder attempts to obtain a patent license. Moreover, the patents Lear was trying to license in 2003 could not have been for the Protec Plus: the Protec Plus was not developed until August 2004 and the patent covering it was not filed until October 2006. Thus, any duty to preserve arising from Lear's 2003 licensing efforts would not have extended to documents about the Protec Plus.

## IV.

In sum, the Court finds that the allegedly spoliated files were electronically stored information, and so Rule 37(e) governs the NHK Companies' request for adverse instructions. And under that rule, "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation[,]" may the Court "instruct the jury that it may or must presume the information was unfavorable to the party." Fed. R. Civ. P. 37(e)(2). Here, at most, the record suggests Lear was negligent in preserving files showing that the Protec Plus was offered for sale more than one year before it filed for patent protection. Accordingly, the Court will not instruct the jury as the NHK Companies request and their motion for sanctions (ECF No. 280) is DENIED.

SO ORDERED.

Dated: November 23, 2022

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
